IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| THE CREST CONDOMINIUM ASSOCIATION, on its own behalf and on behalf of multiple unit owners and JUDITH S. JEFFCOTT, individually, Plaintiffs | : : : : : : | |
| v. | : : | C.A. No.: S16C-10-025 RFS |
| ROYAL PLUS, INC., a Maryland Corporation, K.B. COLDIRON, INC., a Delaware Corporation, SHORE MASONRY, INC., a Delaware Corporation, and GEORGE W. PLUMMER & SONS, INC., a Delaware Corporation, Defendants. | : : : : : : : : | |

## MEMORANDUM OPINION

Upon Defendants' Motions for Summary Judgment. Deferred.

Date Submitted: September 19, 2017
Date Decided: December 7, 2017

William J. Rhodunda, Jr., Esq. and Nicholas G. Kondraschow, Esq., Rhodunda &Williams, 1220 N. Market Street, Suite 700, Wilmington, Delaware 19801, Attorneys for Plaintiff

Nichols H. Rodriguez, Esq. and Dianna E. Louder, Esq, Schmittinger & Rodriguez, P.A., 414 South State Street, Dover, Delaware 19901, Attorneys for Defendant Royal Plus, Inc.

Wade A. Adams III, Esq., Chrissinger & Baumberger, 3 Mill Road, Suite 301, Wilmington, Delaware 19806, Attorney for Defendant K.B. Coldiron, Inc.

Thomas P. Leff, Esq., Casarino Christman Shalk Ranson & Doss, P.A., 1007 N. Orange Street, Nemours Building, Suite 1100, P.O. Box 1276, Wilmington, Delaware 19899, Attorney for Defendant Shore Masonry, Inc.

Joseph S. Naylor, Esq, Swartz Campbell, LLC, 300 Delaware Avenue, Suite 1410, P.O. Box 330, Wilmington, Delaware 19801, Attorney for Defendant George W. Plummer & Sons, Inc.

STOKES, J.

## I.    INTRODUCTION

This matter is presently before the Court on the motions of the Defendants, K.B. Coldiron, Inc. and Royal Plus, Inc. (collectively "Defendants"), for summary judgment. [1] The legal arguments presented in the two Motions are nearly identical, so the Court refer to the Motions collectively as "the Motions" and will address them jointly. The Plaintiffs, The Crest Condominium Association and Judith S. Jeffcott (collectively "Plaintiffs"), oppose the Motions. For the foregoing reasons, Defendants' Motions for Summary Judgment are **DEFERRED**.

## II.    FACTS

In the summer of 2010, The Crest Condominiums located on Virginia Avenue, Rehoboth Beach, Delaware ("The Crest") was damaged by fire. As a result, three of the 15 balconies at The Crest were damaged. The Crest Condominium Association ("Association") contracted with Defendant Royal Plus, Inc. ("Royal Plus") for the company to oversee, supervise, and/or direct the repairs of the fire damage, including the three balconies. Soon after the contract was entered into, the Association learned that all of the 15 balconies had structural problems unrelated to the fire. As a result, the Association contracted with Henry Howe ("Howe") of MAD Engineering, Inc. ("MAD") to design and prepare a plan to repair the structural issues with the balconies. Royal Plus separately undertook to oversee, supervise, and/or direct the reconstruction of the balconies in accordance with the MAD plan.

K.B. Coldiron, Inc. ("Coldiron") and Shore Masonry, Inc. ("Shore") were subcontractors for both the fire remediation and balcony reconstruction projects. Work was performed to complete both projects. On January 16, 2012, Howe visited the work site and determined that the fascia had

---

[1] Defendants Shore Masonry, Inc. and George W. Plummer & Son, Inc. also join the K.B. Coldiron, Inc. and Shore Masonry, Inc. Motions for Summary Judgment. The only role that George W. Plummer & Son. Inc. has played in this situation was to install new steel beams either adjacent to or in place of the existing balcony beams and perform associated welding work. This work was completed in May 2011.

not been properly installed in accordance with the MAD specifications. On the same date, Howe sent a letter to Sam Mabry ("Mabry") the President of the Association informing him of the findings. In response, Mabry sent a letter to Coldiron about Howe's findings on January 20, 2012. Howe's January 16 letter was attached to the letter to Coldiron. On February 24, 2012, Mabry sent a follow up letter to Coldiron stating that the company had not produced a product that met the satisfaction of the Association. This letter also stated that Plaintiffs and Coldiron had not been able to come to an accommodation.

On March 22, 2012, a representative from Coldiron, Howe, Mabry, and Judy Jeffcott ("Jeffcott"), the Treasurer of the Association and one of the Plaintiffs, met to discuss the situation. Coldiron acknowledged that the fascia had not been installed in accordance with the MAD plan and agreed to fix the problem. On March 29, 2012, Mabry sent a third letter to Coldiron expressing the belief that the company did not adhere to the original terms of the contract. Subsequently, a Coldiron work crew was sent out to work on the balconies. When the job was completed on May 6, 2012, Coldiron represented that the problem was fixed.

On August 28, 2012, Plaintiffs received a letter from MAD addressing the water infiltration problems at The Crest. The letter stated that certain tiles on the balconies could have caused the leaking into the lobby below.

Sometime thereafter, condo owners began to experience issues with water intrusion and damage. On November 7, 2014, the Association engaged Home Inspection Technologies, LLC ("Home Inspection") to investigate the problem. The Home Inspection report was issued to the Association on November 1, 2015. The report detailed numerous problems with the balconies including, but not limited to, defects in construction and repair, water intrusion, water damage, rot,

4

and mold. Soffits, ceilings, walls, floors, windows, and doors had all sustained damage. To date, Plaintiffs have spent approximately $187, 250.00 to repair the balconies.

## III. PARTIES' CONTENTIONS

Coldiron and Royal Plus both argue that summary judgment is appropriate at this time. Defendants point out that the statute of limitations for claims alleging property damage is three years.[2] Under 10 *Del. C.* § 8106, the cause of action accrues "at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action."[3] Therefore, according to Defendants, the statute of limitations began to run, at the latest, on August 28, 2012. On that date, Plaintiffs received a letter from MAD stating that the water infiltration problems seen at The Crest may be caused by faulty tile placement on the balconies. The Complaint was filed on October 27, 2016, more than four years after the date given by Defendants as the latest possible time the cause of action accrued. Thus, the Complaint was filed far too long after the expiration of the limitations period.

Royal Plus also claims that the Complaint fails to state a claim upon which relief can be granted. The Association initially engaged Royal Plus to supervise the fire remediation project, which did not include the balconies. After further investigation, the Association discovered additional issues pertaining to the balconies and requested an estimate to expand the scope of the existing project to include the balconies. The Association felt that the estimated price was too high and chose to act as its own general contractor with regard to the balcony repair project. However, the Association did request that a Royal Plus supervisor unlock the door to The Crest to allow workers to access the building. No contract regarding the repair of the balconies existed between the Association and Royal Plus. Thus, according to Royal Plus, Plaintiffs have not stated a claim upon which relief can be granted.

---

[2] 10 *Del. C.* § 8106 (2014).
[3] *Wal-Mart Stores, Inc. v. AIG life Ins. Co.,* 860 A.2d 312, 319 (Del. 2004).

Conversely, Plaintiffs claim that there are genuine issues of material fact regarding when the statute of limitations began to run on Plaintiffs' claims and whether the doctrines of inherently unknowable injuries and fraudulent concealment apply to toll the limitations period. Application of either of these doctrines would toll the statute of limitations. If the limitations period is tolled, it will not begin to run until the plaintiff is on inquiry notice of his or her claims.[4] Thus, Plaintiffs argue that their Complaint was timely filed.

According to Plaintiffs, the doctrine of inherently unknowable injuries applies here. "For the limitations period to be tolled under this doctrine, there must have been no observable or objective factors to put a party on notice of an injury, and plaintiffs must show that they were blamelessly ignorant of the act or omission and the injury."[5] Usually, blameless ignorance can be established by showing "justifiable reliance on a professional or expert whom [the plaintiff] had no ostensible reason to suspect of deception."[6] Plaintiffs argue that, after Coldiron had completed the repair work on May 6, 2012 and represented that the problem was fixed, there were no observable or objective issues to put Plaintiffs on notice of an injury. Additionally, they claim to have justifiably relied on Coldiron's assertion that the problem had been solved, giving rise to their blameless ignorance. Plaintiffs claim that the earliest date on which they could have been aware of the broader balcony issue was November 7, 2014 when Home Inspection was retained to inspect and report on the water intrusion problem. Thus, in Plaintiffs' view, the Complaint was filed before the statute of limitations ran out.

Moreover, Plaintiff's assert that the doctrine of fraudulent concealment applies to toll the statute of limitations. If a defendant fraudulently conceals information which would have put the

---

[4] *Certainteed Corp. v. Celotex Corp.*, 2005 WL 217032, at *7 (Del. Ch. Jan. 24, 2005).
[5] *In re Dean Witter*, 1998 WL 442456, at *5 (Del. Ch. July 17, 1998).
[6] *Id.*

plaintiff on notice of the truth or intentionally throws the plaintiff "off the trail of inquiry", the statute of limitations is tolled.[7] Plaintiffs argue that they were misled my Coldiron, which caused a delay in the discovery of the issues giving rise to this case. They assert the following affirmative acts as support:

- Coldiron acknowledged and agreed that the fascia had not been packed out by 2" x 4" wood members or metal studs per the MAD balcony reconstruction plans.

- A Coldiron representative led the Association, Mabry, and Jeffcott to believe that the company would fix the problem.

- Coldiron subsequently sent out a crew to work on the balconies and, when work was complete, represented that the problem was fixed.[8]

In a different vein, Plaintiffs state that Royal Plus separately undertook to oversee, supervise, and/or direct the balcony reconstruction project. As a result, Royal Plus owed a duty to the Plaintiffs, making it so the Complaint did state a claim upon which relief could be granted. Plaintiffs assert the following as support for this assertion:

- Coldiron submitted proposals to Royal Plus dated February 23, 2011, April 9, 2011, and May 16, 2011. The proposals all related solely to the balcony reconstruction project.

- On March 16, 2011, March 28, 2011, and August 8, 2011, Coldiron wrote "Daily Time and Material Work Reports" which listed Royal Plus as the customer. The reports describe the work as "demo balcony soffits for steel inspection," "protect balcony floors with Masonite," and "supply, erect, and dismantle scaffolding on balcony edge and wing walls, paint steal angle to match break metal," respectively.

- Independent Steel Inspections issued a report noting that on or about July 6, 2011, the inspector for Independent Steel Inspections met with Mr. Hybicki (of Royal Plus) regarding the "Crest Condo Steel Balcony Renovation" and reviewed with Mr. Hybicki the MAD Engineering balcony reconstruction plans.

---

[7] *Id.*
[8] Pls.' Answering Br. Opp'n Def. Royal Plus, Inc.'s Mot. Summ. J. 16.

7

- Coldiron letter indicating that Royal Plus had undertaken a duty to oversee, supervise and/or direct work on all the balconies.

- Mr. Hybicki was the on-site supervisor for Royal Plus and daily oversaw, supervised and/or directed the work of the subcontractors on both the fire remediation project and the balcony reconstruction project.

- Mr. Hybicki submitted the Coldiron proposals regarding the balcony reconstruction project to the Association, which the Association accepted.

- Upon information and belief, Royal Plus made changes to the MAD reconstruction plan that were then performed on all of the balconies.[9]

As their final argument, Plaintiffs state that summary judgment is premature, as the parties have not engaged in full discovery. Plaintiffs have not yet issued discovery to Defendants and no depositions by any party have been taken. They believe that further inquiry into the relationships, responsibilities, and actions of Defendants will further lead to genuine issues of material fact. Specifically, Plaintiffs require the deposition of Thomas Holmes, the President of the Association at initiation of Defendants' work. For this reason, Plaintiffs believe that summary judgment at this time is premature.

Royal Plus and Coldiron responded to Plaintiffs' opposition individually, but their arguments are largely the same. Royal Plus counters by first arguing that the series of letters exchanged in the winter and spring of 2012 were sufficient to put Plaintiffs on notice of a potential cause of action or, at the very latest, Plaintiff should have been on notice by August 28, 2012 when the second MAD letter regarding the balcony issues was received. Coldiron asserts that the statute of limitations began to run on May 6, 2012 when the corrections to the balcony projects were completed. Regardless of whether the limitations period began in May or August of 2012, in Defendants view, the Complaint was filed after the expiration of such period.

---

[9] *Id.* at 18-19.

Additionally, Defendants recognize that the statute of limitations could be tolled as a result of the doctrine of inherently unknowable injuries or the doctrine of fraudulent concealment, but do not believe that either theory applies in this case. Plaintiffs have the burden of establishing that there was no observable evidence or objective factors which should have signaled the broader balcony issue. According to Defendants, Plaintiffs are unable to make this showing.

Defendants argue that numerous inspections were made of the balconies during the winter and spring of 2012 and that letters were exchanged between the various parties on the balcony issue. Essential to this argument is Defendants assertion that Plaintiffs were party to all of these happenings, meaning that they could not have been unaware of the broader extent of the balcony issues. Coldiron writes, "…based on the letters and emails between the parties, it is clear that the Association was savvy enough to investigate problems and understand problems with edge material."[10] Moreover, Defendants point out that Coldiron's representation that the problem was fixed is inconsequential. Plaintiffs still sought an investigation by MAD because water infiltration remained a problem after May 2012.

Defendants further argue that there was no fraudulent concealment in this case. In Defendants' view, Coldiron was closely supervised by MAD during the repair process to ensure that all work was completed to the Association's satisfaction. Therefore, to the extent that any fraudulent concealment argument can be made, it should be made against MAD, not Coldiron. As further support for their position, Defendants assert that once Plaintiffs received the April 28, 2012 MAD report detailing the potential water infiltration problems related to the balconies they should have engaged in further inquiry to assess the severity of the problem. Such an investigation would have

---

[10] Def. K.B. Coldiron's Reply Br. Pl.'s Opp'n Def.'s Mot. Sum. J. 9-10.

9

fulfilled Plaintiffs duty to investigate the situation with "reasonable diligence" as well as alerted them of the facts giving rise to this cause of action.

Finally, Defendants argue that summary judgment is not premature and that additional discovery is not necessary in order to decide the Motions. Also, according to Defendants, the later addition of George W. Plummer & Son, Inc. as a defendant does not change the fact that this issue is ripe for decision.

## IV. STANDARD OF REVIEW

The Court may grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."[11] The moving party bears the initial burden of showing no material issues of fact are present.[12] If the moving party properly supports their motion, the burden then shifts to the non-moving party to rebut the contention that no material issues of fact exist.[13] In considering a motion for summary judgment, the Court must review the record in a light most favorable to the non-moving party.[14] The Delaware Supreme Court illustrates the parameters of granting summary judgment as follows:

> Under no circumstances, however, will summary judgment be granted when, from the evidence produced, there is a reasonable indication that a material fact is in dispute. Nor will summary judgment be granted if, upon an examination of all the facts, it seems desirable to inquire thoroughly into them in order to clarify the application of the law to the circumstances.[15]

---

[11] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[12] *Id.* at 681.
[13] *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99 (Del. 1992).
[14] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962).
[15] *Id.* at 468.

## V.    ANALYSIS

Here, the Court must consider whether, when viewing the facts in the light most favorable to Plaintiffs, there are genuine issues of material fact. There are factual questions in dispute, namely whether the doctrines of inherently unknowable injuries and fraudulent concealment tolled the statute of limitations. Plaintiffs have submitted adequate evidence to show that the facts of this case may support the finding that one or both of these doctrines apply. Therefore, these are questions of fact that must be left to the jury.[16]

Additionally, there is a desire to inquire more fully into the facts of this case. Plaintiffs have yet to issue discovery and no depositions have been taken by any party to this case. The Court agrees that additional inquiry into the facts of this case will allow for a more fully developed record, which is essential to making the appropriate determinations on motions in this case. Thus, it would be premature to grant summary judgment.[17]

## VI.    CONCLUSION

Given that genuine issues of material fact remain, Royal Plus and Coldiron's Motions for Summary Judgement are deferred pending the completion of discovery together with the opportunity for the parties to supplement their positions.[18]

**IT IS SO ORDERED.**

---

[16] *Silverstein v. Fischer*, 2016 WL 3020858, at *5 (Del. Super. Ct. May 18, 2016).

[17] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69 (Del. 1962) ("Nor will summary judgment be granted if, upon examination of all the facts, it seems desirable to inquire fully into them in order to clarify the application of the law to the circumstances.").

[18] The Pretrial Scheduling Order sets a February 7, 2018 discovery deadline.