WAL–MART STORES, INC., a Delaware Corporation, and Wachovia Bank of Georgia, N.A., in its capacity as Trustee of the Wal–Mart Stores, Inc. Corporation Grantor Trust, Plaintiffs Below, Appellants,

v.

AIG LIFE INSURANCE COMPANY, a Delaware Corporation; Hartford Life Insurance Company, a Connecticut Corporation; Westport Management Services, Inc., a Delaware Corporation; International Corporate Marketing Group, LLC, a Delaware limited liability company; National Benefits Group, Inc., dba Marsh Financial Services, a Minnesota Corporation; Seabury & Smith, Inc., a Delaware Corporation; Marsh & McLennan National Marketing Corporation, now known as J & H Marsh & McLennan Private Client Services, Inc., a Delaware Corporation, Defendants Below, Appellees.

No. 126,2004.

Supreme Court of Delaware.

Submitted: Aug. 18, 2004.
Decided: Nov. 4, 2004.

Robert K. Payson and Gregory A. Inskip, of Potter Anderson & Corroon, L.L.P., Wilmington; Michael Y. Horton (argued) and David S. Cox, of Morgan, Lewis & Bockius, L.L.P., Los Angeles, CA; Paul A. Zevnik, of Morgan, Lewis & Bockius, L.L.P., Washington, DC, of counsel, for Appellants.

Richard D. Heins and Carolyn S. Hake, of Ashby & Geddes, Wilmington; James F. Jorden and Paul A. Fischer, of Jorden Burt, L.L.P., Washington, DC, of counsel, for Appellee AIG Life Insurance Company.

Elizabeth A. Wilburn, of Blank Rome, L.L.P., Wilmington; Ian M. Comisky and Roger F. Cox, of Blank Rome, L.L.P., Philadelphia, PA, of counsel, for Appellee National Benefits Group, Inc.

Edward P. Welch, Julie T. Saunders and Edward B. Micheletti, of Skadden, Arps, Slate, Meagher & Flom, L.L.P., Wilmington; Marco E. Schnabl and Michael S. Davi, of Skadden, Arps, Slate, Meagher & Flom, L.L.P., New York City, of counsel, for Appellees Marsh Financial Services, Seabury & Smith, Inc., Marsh, Inc., and Marsh & McLennan National Marketing

Corporation, now known as J & H Marsh & McLennan Private Client Services.

R. Franklin Balotti, Lisa A. Schmidt and Michael R. Robinson, of Richards, Layton & Finger, P.A., Wilmington; Barry A. Chasnoff (argued), and David R. Nelson, of Akin Gump Strauss Hauer & Feld, L.L.P., San Antonio, TX; Michael Quigley and Jeffrey P. Kehne, of Akin Gump Strauss Hauer & Feld, L.L.P., Washington, DC; Michael Small, of Akin Gump Strauss Hauer & Feld, L.L.P., Los Angeles, CA, of counsel, for Appellees Hartford Life Insurance Company and International Corporate Marketing Group.

Before HOLLAND, BERGER and JACOBS, Justices.

PER CURIAM:

On September 3, 2002, the plaintiff below-appellant, Wal–Mart Corporation ("Wal–Mart"), brought an action in the Court of Chancery. In its amended complaint Wal–Mart asserted legal and equitable claims arising out of insurance policies that Wal–Mart had purchased between 1993 and 1995 from the defendants, who are certain insurance brokers and insurance providers. The Court of Chancery granted the defendants' motion to dismiss the amended complaint, determining as a matter of law that all of Wal–Mart's claims had accrued between 1993 and 1995, the period during which the policies were purchased. The Court further concluded that there was no basis to toll the running of the three-year statute of limitations. Because Wal–Mart's claims were found to be time-barred, the Court of Chancery granted the motion to dismiss.

Wal–Mart appealed to this Court, contending that: (1) none of its claims accrued before October 19, 1999, a date less than three years before this Chancery action was filed; (2) even if Wal–Mart's claims did accrue before October 19, 1999, the statute of limitations was tolled at least until then; and (3) in any event, the motion to dismiss should have been denied because the issues of when the causes of action accrued and whether the statute of limitations was tolled were fact-intensive and could not be decided on the face of the complaint.

We agree that the limitations defense poses issues that require a more developed record, for which reason this matter was improperly disposed of on a motion to dismiss. Accordingly, we reverse the judgment of the Court of Chancery and remand the case for further proceedings.

### FACTS

#### The Parties

The pertinent facts, which for present purposes are assumed to be true, appear from the well-pleaded allegations of the complaint.[1] Wal–Mart is a national retailer that is incorporated in Delaware and whose principal place of business is in Bentonville, Arkansas.[2] The defendants are insurance providers and insurance brokers from or through whom Wal–Mart purchased policies of insurance between 1993 and 1995.[3]

1. Del. Ch. R. 56; *Grobow v. Perot,* 539 A.2d 180, 187 (Del.1988). All references in this Opinion to the "complaint" are to the amended complaint.

2. The co-plaintiff, Wachovia Bank of Georgia, is the trustee of the Wal–Mart Corporation Grantor Trust, which was established in December 1993 to purchase the insurance poli-cies at issue in this case. In this Opinion, both plaintiffs are referred to collectively as "Wal–Mart." *Wal–Mart v. AIG Insurance,* C.A. No. 19875, 2004 WL 405913 (Del.Ch. Mar. 2, 2004) (hereinafter "Op.")

3. Defendant AIG Life Insurance Company ("AIG") is a Delaware corporation with its principal place of business in Wilmington,

### Facts Relating to the Dismissal Motion

Wal–Mart's claims arise out of its purchase from the insurer-defendants of some 350,000 corporate-owned life insurance ("COLI") policies, under which Wal–Mart was named as the beneficiary. Those COLI policies, which insured the lives of Wal–Mart's employees, were purchased as part of a plan whereby the insurers granted Wal–Mart loans that were used to pay the premiums on the policies. Wal–Mart would then deduct the interest payments on those loans from its income for purposes of reducing its federal income taxes.[4] During the 1980s and early 1990s, many large corporate employers besides Wal–Mart had purchased COLI policies under similar tax-reducing COLI plans.

In August 1993, Wal–Mart retained the broker-defendants to advise it about using COLI policies to obtain tax benefits. After proposals from several insurance companies were received, the broker-defendants recommended that Wal–Mart purchase COLI policies from AIG and Hartford. The broker-defendants also recommended that Wal–Mart create and use a Georgia "grantor trust" as the vehicle to purchase the policies, so that Georgia law would govern any "insurable interest" issues that might arise after the policies were purchased. The broker-defendants advised Wal–Mart that Georgia law would provide a favorable result if any employee(s) challenged whether Wal–Mart had a legally valid insurable interest in the lives of its workers.

Between 1993 and 1995, Wal–Mart purchased approximately 350,000 COLI policies from the insurer-defendants, and retained Marsh, Inc. to administer and service those policies. Wal–Mart sought—and obtained—assurances from both the insurer defendants and the broker defendants that: (i) the policies complied with the Internal Revenue Code, (ii) future changes to the tax law were unlikely to impact the policies adversely, and (iii) Wal–Mart had a valid insurable interest in the lives of its employees.

Through 1995, Wal–Mart claimed the federal tax deductions as contemplated under the COLI plan. In 1996, however, the legal landscape changed. As part of the Health Insurance Portability and Accountability Act ("HIPAA"), Congress prospectively disallowed interest deductions for loans used to fund COLI plans. HIPAA also provided for "transitional relief" that allowed taxpayer companies to take deductions in 1997 and 1998 for up to a maximum of 20,000 COLI policies. HIPAA did not, however, disallow any deductions that were taken before January 1, 1996. In response to the HIPAA legislation, Wal–

Delaware. Defendant Westport Management Services, Inc. ("Westport") is a Delaware corporation with its principal place of business in Trumbull, Connecticut. Westport served as AIG's representative in connection with the policies at issue in this case. Defendant Hartford Life Insurance Company ("Hartford") is a Connecticut corporation with its principal place of business in Hartford, Connecticut. Defendant International Corporate Marketing Group, LLC ("ICMG") is a Delaware limited liability company with its principal place of business in Florham, New Jersey. ICMG served as Hartford's representative in connection with the policies at issue in this case. In this Opinion, AIG, Hartford, and their respec-

tive representatives are referred to collectively as "the insurer-defendants." Defendants Seabury & Smith, Inc., Marsh Financial Services, Marsh, Inc. and Marsh & McLennan National Marketing Corporation ("the Marsh entities"), and National Benefits Group, Inc. ("NBG") acted as insurance brokers for Wal–Mart in obtaining the insurance policies at issue in this case. In this Opinion, the Marsh Entities and NBG are referred to collectively as "the broker-defendants."

4. Another favorable benefit of the COLI plan was that any policy benefits paid out thereunder would be tax exempt.

Mart immediately began "unwinding" its COLI policies, although it took whatever deductions for 1997 and 1998 were allowed under HIPAA's transitional relief provision.[5]

Of importance to Wal–Mart's claims is that HIPAA eliminated the deductibility of interest payments for loans funding COLI policies *prospectively*, but did not disallow deductions taken before 1996; *i.e.*, *retrospectively*. In 1997, nonetheless, the United States Internal Revenue Service ("IRS") brought several lawsuits in which it sought to disallow *retrospectively* COLI-related tax deductions that the defendants in those cases had taken before 1996. In those lawsuits the IRS characterized the COLI programs as "sham transactions." Wal–Mart was not included among the companies that were named as defendants in the IRS lawsuits.

The first of the IRS cases, *Winn–Dixie Stores Inc. v. C.I.R.*,[6] was decided by the United States Tax Court on October 19, 1999. In that case, the Tax Court disallowed deductions that were taken in 1993 for the interest that had accrued on Winn–Dixie's COLI policies. After the *Winn–Dixie* decision, two other federal courts retrospectively disallowed COLI tax deductions that had been taken before 1996.[7] After those adverse decisions were handed down, Wal–Mart negotiated a settlement with the IRS. In that settlement, which was concluded in 2002, most of the COLI-related tax deductions that Wal–Mart had claimed before 1996 were retrospectively disallowed.[8]

Separate and apart from the tax deductibility issue, beginning in 2001 Wal–Mart found itself confronted with lawsuits brought by the estates of deceased employees, wherein the estates claimed that Wal–Mart had no legally valid insurable interest in its employees' lives. In August 2002, in one of these lawsuits, *Mayo v. Hartford Life Ins. Co.*, the Court held that Texas law, rather than Georgia law, governed the insurable interest question, and that under Texas law Wal–Mart had no valid insurable interest in the lives of its Texas employees.[9] Similar lawsuits challenging Wal–Mart's insurable interest in the employees' lives were pending in other jurisdictions at the time Wal–Mart filed its Court of Chancery action on September 3,

---

**5.** The unwinding process was completed in January 2000.

**6.** 113 T.C. 254, 1999 WL 907566 (1999), *aff'd*, 254 F.3d 1313 (11th Cir.2001).

**7.** *American Elec. Power, Inc. v. U.S.*, 136 F.Supp.2d 762 (S.D.Ohio 2001), *aff'd*, 326 F.3d 737 (6th Cir.2003) (upholding IRS disallowance of deductions of interest paid on loans funding COLI plans); *In re CM Holdings, Inc.*, 254 B.R. 578 (Bankr.D.Del.2000), *aff'd*, 301 F.3d 96 (3d Cir.2002) (upholding IRS claim for unpaid taxes after deductions taken for COLI policies).

**8.** In its complaint, Wal–Mart alleges that the IRS was threatening litigation against it, and that in the face of the decisions in *Winn–Dixie*; *In re CM Holdings*, and *American Electric Power, Inc.* Wal–Mart had little choice but to settle. In their answering brief the defen-

dants argue that Wal–Mart "voluntarily" settled with the IRS, and point to cases decided after that settlement which found that the deductions were not sham transactions. See, *Dow Chem. Co. and Subsidiaries v. U.S.*, 250 F.Supp.2d 748 (E.D.Mich.2003) *appeal pending*, No. 00–10331–BC (6th Cir.) (filed Oct. 10, 2003). For purposes of a motion to dismiss, however, we accept as true all of the plaintiff's well-pleaded facts. It is for the trial court ultimately to resolve whether Wal–Mart should have settled with the IRS.

**9.** 220 F.Supp.2d 714 (S.D.Tex.2002), *aff'd*, 354 F.3d 400 (5th Cir.2004). The *Mayo* Court imposed a constructive trust in favor of the insured employees' estates upon the policy benefits that had been paid to Wal–Mart under the COLI policies.

2002.[10]

### Procedural History

Wal–Mart's Chancery complaint alleges several claims arising out of both the retrospective disallowance of the COLI-related tax deductions and the adverse "insurable interest" litigation. Specifically, Wal–Mart's complaint asserts claims against all defendants for: (i) unjust enrichment and restitution, (ii) breach of fiduciary duty, (iii) equitable fraud, (iv) breach of contract, (v) violation of the Delaware Consumer Fraud Act, and (vi) declaratory relief. Wal–Mart also asserts a separate claim against the broker defendants for negligence.

With one possible exception, the gravamen of those claims is that the defendants failed to disclose material facts and risks of the COLI plan at the time that Wal–Mart, in reliance upon the defendants' advice, purchased the COLI policies. Wal–Mart contends, however, that one of its claims—unjust enrichment—rests upon a different (non-disclosure) basis, viz, frustration of commercial purposes, a ground that is not attributable to any wrongful conduct of the defendants.

The relief that Wal–Mart seeks is an award of money damages equal to the "hard dollar losses" that Wal–Mart incurred by reason of the failure of the contemplated benefits of the COLI policies. Wal–Mart also seeks to recover all profits the defendants made in connection with the COLI transactions. In addition to and apart from damages, Wal–Mart seeks a declaratory judgment that the defendants are liable for any future losses

Wal–Mart may incur that are associated with the failed policies, including the costs of future "insurable interest" litigation to which Wal–Mart may be subjected. Importantly, however, Wal–Mart does not seek to recover any COLI-related deductions that were prospectively disallowed under HIPAA. Rather, Wal–Mart seeks to recover only those tax benefits that were disallowed *retrospectively* as a result of the adverse federal court rulings, plus the costs it incurred as a result of the insurable interest litigation.

In December 2002, the defendants moved to dismiss Wal–Mart's complaint on the ground that all Wal–Mart's claims were time barred and (alternatively) that Wal–Mart's complaint failed to state a claim upon which relief could be granted. The Court of Chancery granted the motion on the first ground, concluding as a matter of law that all of Wal–Mart's claims were barred by 10 *Del. C.* § 8106, the applicable statute of limitations.[11]

### The Decision of the Court of Chancery

In reaching that result, the Court of Chancery determined that Wal–Mart's claims had accrued between 1993 and 1995, and that accordingly, the action was commenced after the three-year limitations period had expired. The Court also concluded that the running of the limitations period was not tolled because Wal–Mart had been on inquiry notice of its claims more than three years before its lawsuit was commenced.

In concluding that all of Wal–Mart's claims had accrued at the time Wal–Mart purchased the COLI policies—between

---

**10.** See, *Rice v. Wal–Mart Stores, Inc.*, C.A. No. 02–390–B (D.N.H., filed July 23, 2002); *Waller v. AIG Life Ins. Co.*, C.A. No. 4:02–CV–120–Y (N.D. Tex., filed July 3, 2001); *Miller v. Wal–Mart Stores, Inc.*, C.A. No. 02–4015 (S.D. Tex., filed Oct. 22, 2002); *Lewis v. Wal–Mart* *Stores, Inc.*, C.A. No. 02–CV–944–EA(M) (N.D. Okla., filed Dec. 18, 2002).

**11.** Op. at 12, 14. Having determined that the claims were time barred, the Court did not reach the defendants' alternative ground for dismissal.

1993 and 1995 [12]—the Court identified as the common premise of all the claims (including the claim for unjust enrichment) Wal–Mart's contention that the defendants had failed to disclose the risks inherent in the COLI policies at the time those policies were purchased.[13] Because the claims had accrued by 1995, the Court held that Wal–Mart's September 3, 2002 lawsuit was barred by the three-year statute of limitations.

The Court of Chancery also determined as a matter of law that the statute of limitations had not been tolled because Wal–Mart's claims were not inherently unknowable.[14] The Court grounded that conclusion upon various news articles, all published between 1992 and 1995, that discussed certain risks related to COLI policies. The Court also considered two technical advisory memoranda ("TAM") that the IRS had issued to companies other than Wal–Mart. Those TAMs expressed the IRS's legal position that COLI interest deductions should be disallowed because they were "sham" transactions.[15] Although these materials were extrinsic to Wal–Mart's complaint, the Court did not treat those articles and TAMs as having converted the Rule 12(b)(6) motion into a motion for summary judgment. Instead, the Court took judicial notice of the arti-

cles and the TAMs, and proceeded to decide the motion under Rule 12(b)(6).

## Standard of Review

■■■ This Court reviews *de novo*, for errors of law, the dismissal of a complaint under Court of Chancery Rule 12(b)(6).[16] Under Rule 12(b)(6), the facts alleged in the complaint are taken as true and all inferences are viewed in the light most favorable to the non-moving party (here, Wal–Mart).[17] A dismissal of the claims will be upheld only if it appears from the well-pleaded allegations of the complaint that the plaintiffs would not be entitled to relief under any set of facts that could be proven to support the claims asserted.[18] We find, for the reasons discussed below, that the Court of Chancery erroneously dismissed Wal–Mart's complaint.

## Accrual of Wal–Mart's Claims

A critical basis for the Court of Chancery's conclusion that Wal–Mart's claims were time-barred was its determination as a matter of law that all of Wal–Mart's claims had accrued at the time the COLI policies were purchased, *i.e.*, between 1993 and 1995. The Court found that the gist of Wal–Mart's claims was the defendants' alleged failure to disclose to Wal–Mart, at the time the policies were purchased, the

---

**12.** *Id.* at 13.

**13.** *Id.* at 13–14. The Court did not expressly determine whether Wal–Mart's unjust enrichment claim was fault-based (in which case it would also be predicated upon the defendant's alleged failure to disclose), or whether it was no-fault based (in which case the claim would be grounded upon Wal–Mart's frustration of commercial purpose). In a footnote, the trial court suggested, without deciding, that even if Wal–Mart had stated a claim for unjust enrichment predicated upon the doctrine of commercial frustration (in which case the claim would not accrue until Wal–Mart's commercial purposes had been frustrated) it

could not recover under that theory because Wal–Mart had notice of the risks at the time of purchase, with the result that all risks had been contractually allocated to Wal–Mart. Op. at 17, n 53.

**14.** *Id.* at 18–19.

**15.** *Id.* at 6–8, 18–19.

**16.** *VLIW Tech., LLC. v. Hewlett–Packard Co.*, 840 A.2d 606, 610 (Del.2003).

**17.** See, *Id.* at 611.

**18.** *Id.* at 610–11.

material risks associated with the COLI policies, including the tax deductibility and the insurable interest risks.

The starting point of the Court of Chancery's analysis (with which all parties agree) is that the applicable statute of limitations is 10 *Del. C.* § 8106, which imposes a three-year period of limitations on Wal–Mart's tort, contract, and fiduciary duty claims; and that that three-year period applies by analogy to proceedings in equity.[19] The Court further found that Wal–Mart's claim for unjust enrichment was also controlled by the three-year statute of limitations.[20] Accordingly, the Court concluded, for Wal–Mart's lawsuit to have been timely filed, the claims must have accrued no earlier than September 3, 1999 (three years before Wal–Mart filed its action), because under Section 8106, the three-year period of limitations begins to run when the cause of action "accrues."[21]

This Court has repeatedly held that a cause of action "accrues" under Section 8106 at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action.[22] As noted, the Court of Chancery found as a matter of law, that the wrongful acts charged in the complaint occurred at the time Wal–Mart purchased the COLI policies. Although Wal–Mart contends that that conclusion was improperly

reached in the context of a Rule 12(b)(6) dismissal motion, we need not decide that question. Even if it is assumed that Wal–Mart's cause of action accrued by 1995 at the latest, the pleaded facts permit a reasonable inference that the statute of limitations was tolled, *i.e.*, did not begin to run, until October 19, 1999—less than three years before this lawsuit was filed.

### Tolling of the Statute of Limitations

 The trial court held as a matter of law that the statute of limitations period was not tolled as to Wal–Mart's claims. Even after a cause of action accrues, the "running" of the limitations period can be "tolled" in certain limited circumstances.[23] Under the "discovery rule" the statute is tolled where the injury is "inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of."[24] In such a case, the statute will begin to run only "upon the discovery of facts 'constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery' of such facts."[25]

The Court of Chancery held as a matter of law that Wal–Mart was on inquiry notice of its claims more than three years

---

**19.** Op. at 12 (citing 10 *Del. C.* § 8016 and *Fike v. Ruger*, 754 A.2d 254, 260 (Del.Ch. 1999), *aff'd* 752 A.2d 112 (Del.2000)).

**20.** Op. at 12 (citing *Merck v. SmithKline Beecham Pharms. Co.*, C.A. No. 15443–NC, 1999 WL 669354 at *42 (Del.Ch. Aug. 5, 1999), *aff'd*, 766 A.2d 442 (Del.2000)).

**21.** Op. at 13.

**22.** *SmithKline Beecham Pharms. Co. v. Merck & Co.*, 766 A.2d 442, 450 (Del.2000); *Isaacson, Stolper & Co. v. Artisan's Savings Bank*, 330 A.2d 130, 132 (Del.1974).

**23.** *Coleman v. PricewaterhouseCoopers, LLC*, 854 A.2d 838, 842–43 (Del.2004) (discovery

rule applied to malpractice action against accounting firm, because a layperson is unable to detect negligence in accounting practices); *Layton v. Allen*, 246 A.2d 794 (Del.1968) (statute of limitations was tolled when both patient and doctor were unaware that a foreign object was left in the patient; the injury was inherently unknowable until the patient first experienced pain as a result of the object).

**24.** *Coleman*, 854 A.2d at 842.

**25.** *Id.* (quoting *Becker v. Hamada, Inc.*, 455 A.2d 353, 356 (Del.1982) (emphasis in original)).

before it filed its Chancery action. Rejecting Wal–Mart's contention that its claims were "inherently unknowable" before September 3, 1999, the Court cited a "barrage of relevant information" that (it held) was available to Wal–Mart and put Wal–Mart on inquiry notice of its claims. The cited information included the TAMs issued by the IRS, as well as several newspaper articles that had been published during the mid 1990s.

■■■ That conclusion was erroneous for three separate reasons. First, the trial court was not free to consider the TAMs and newspaper articles on this Rule 12(b)(6) motion, because these materials were neither attached to, nor incorporated by reference into, the complaint. Matters extrinsic to a complaint generally may not be considered in a ruling on a motion to dismiss.[26] Court of Chancery Rule 12(b) provides that if the court considers matters outside the pleadings, the motion shall be "treated as one for summary judgment" and the parties must be given an opportunity to take discovery. On a motion to dismiss, the Court may consider documents that are "integral" to the complaint, but documents outside the pleadings may be considered only in "particular instances and for carefully limited purposes."[27]

Here, Wal–Mart's complaint did not refer to any newspaper articles or TAMs, and the record does not otherwise establish that these documents were publicly filed.[28] Accordingly, the Court could not properly consider those materials, under judicial notice principles, to resolve conflicting factual inferences on a Rule 12(b)(6) motion to dismiss.

■■■ Second, even if the articles and TAMs were properly before the Court, they do not conclusively demonstrate that Wal–Mart was on inquiry notice of its claims before September 3, 1999. The cited articles, all published between 1992 and 1995, discussed the existence of the COLI tax loophole and their use by many companies. The articles also discussed proposed legislation that could *prospectively* eliminate the loophole. But, the articles did not discuss *retrospective* disallowance of the deductions, which is the gravamen of Wal–Mart's tax-related claims. Moreover, on this record it is far from clear that the TAMs were sufficient to put Wal–Mart on inquiry notice of its tax-related claims against these defendants. TAMs are IRS rulings issued to private companies. As such, those rulings have questionable value either as binding or persuasive authority as to non-parties.[29] The record does not

**26.** *In re Santa Fe Pacific Corp. S'holder Litig.,* 669 A.2d 59, 68 (Del.1995).

**27.** *Id.* at 69.

**28.** See, *DiLorenzo v. Edgar,* C.A. No. 03–841–SLR, 2004 WL 609374 at *2 (D.Del. Mar. 24, 2004) (On a motion to dismiss, the court may take judicial notice of the contents of documents *required by law to be filed, and actually filed, with federal or state officials*) (emphasis added); *Southmark Prime Plus, L.P. v. Falzone,* 776 F.Supp. 888, 891–92 (D.Del.1991) (court could judicially notice contents of court records from another jurisdiction and SEC filings, but not letters sent by defendants because the letters addressed disputed facts); *Coca–Cola v. Whistle Co. of America,* 20 F.2d

261, 262 (D.Del.1927) (court may not take judicial notice of the patents of prior art cited in motion to dismiss); *In re Wheelabrator Technologies, Inc. S'holders Litig.,* C.A. No. 11495, 1992 WL 212595 (Del.Ch. Sept. 1, 1992) (publicly filed documents, including certificate of incorporation, are judicially noticeable on a motion to dismiss).

**29.** See, *Amtel, Inc. v. U.S.,* 31 Fed Cl. 598 (Fed.Cl.1994), *aff'd* 59 F.3d 181 (Fed.Cir. 1995); *Teichgraeber v. Comm'r of Internal Revenue,* 64 T.C. 453, 1975 WL 3168 (1975) (TAM was not subject to discovery and was exempted from disclosure under 5 U.S.C.A. § 522(b), and private letter rulings that may have been issued by IRS to other taxpayers were not relevant to taxpayers case).

disclose whether these TAMs were publicly available before 1999, an important consideration because under 26 U.S.C.A. § 6110(g)(5), the Secretary of the Treasury is not invariably required to make technical advice memoranda publicly available.

Third, and finally, neither the newspaper articles nor the TAMs contain any facts that would alert Wal–Mart to its claims relating to the insurable interest question. The newspaper articles and TAMs do not discuss the insurable interest-related issue, nor did the Court of Chancery make any specific determination of how Wal–Mart was placed on inquiry notice of its insurable interest-related claims.

 What the complaint does allege is that Wal–Mart did not settle the retrospective tax deduction claims with the IRS until 2002, and that no court had retrospectively disallowed the pre–1996 tax deductions until the Tax Court's *Winn–Dixie* decision was handed down on October 19, 1999. The first case that challenged whether Wal–Mart had a legally valid insurable interest in its employees was not filed until 2001. Wal–Mart alleges that it relied on the advice of the broker-defendants in establishing the Georgia Grantor Trust, and that its injuries resulting from the insurable interest litigation were inherently unknowable until at least one court had determined that Georgia law did not govern the insurable interest issue. Those pleaded facts create a reasonable inference that Wal–Mart's tax-related injuries were inherently unknowable before October 1999, and that Wal–Mart's insurable interest-related injuries were inherently unknowable before 2002. Those same pleaded facts also create a reasonable inference that Wal–Mart was blamelessly ignorant of the "wrongful acts." To be sure, the pleaded facts also create reasonable infer-

ences to the contrary. A Rule 12(b)(6) motion, however, is not a proper procedural vehicle to resolve conflicting inferences of fact.

Accordingly, the Court of Chancery legally erred in deciding, as a matter of law, that the statute of limitations was not tolled.

## CONCLUSION

For the foregoing reasons, the judgment of the Chancery Court is reversed, and this case is remanded for further proceedings consistent with this Opinion.