# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JACOB KASHER HINDLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **C.A. No. 2019-0586-JRS** |
| | ) | |
| LUKASZ GOTTWALD, LAWRENCE J. | ) | |
| SPIELMAN and RENEE KARALIAN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: May 7, 2020
Date Decided: July 22, 2020

Brian E. Farnan, Esquire and Michael J. Farnan, Esquire of Farnan LLP, Wilmington, Delaware and Andrew J. Goodman, Esquire and Diana Breaux, Esquire of Foster Garvey P.C., New York, New York, Attorneys for Plaintiff Jacob Kasher Hindlin.

Chad M. Shandler, Esquire, Katharine L. Mowery, Esquire and Angela Lam, Esquire of Richards, Layton & Finger, P.A., Wilmington, Delaware, Attorneys for Defendants Lukasz Gottwald and Renee Karalian.

Dawn C. Doherty, Esquire and Marc Sposato, Esquire of Marks, O'Neill, O'Brien, Doherty & Kelly, Wilmington, Delaware, Attorneys for Defendant Lawrence J. Spielman.

**SLIGHTS, Vice Chancellor**

Plaintiff, Jacob Kasher Hindlin ("Hindlin"), was encouraged by his business manager, Defendant, Lawrence Spielman ("Spielman), to invest in Core Nutrition LLC ("Core") in February 2015. In connection with this investment, Hindlin signed a Joinder Agreement and Signature Page to the Limited Liability Company Agreement of Core Nutrition, LLC (the "LLC Agreement"). Hindlin acquired additional Core units, again at Spielman's urging, in early 2017. More than a year later, Core was acquired by Keurig Dr. Pepper Inc. ("KDP") for an aggregate transaction value of $449 million. Based on his 0.6% ownership stake in Core as of the end of 2017, Hindlin believed he was entitled to $2.75 million for his units. Core maintained he was owed only $393,582.89.

Hindlin brings this action to recover what he believes he is owed by Core against three former members of Core's Board of Managers (the "Board"). He alleges Defendants, Spielman, Lukasz Gottwald ("Gottwald") and Renee Karalian ("Karalian"), improperly diluted Core's minority shareholders in breach of their fiduciary duties and the covenant of good faith and fair dealing implied within the LLC Agreement. Defendants have moved to dismiss the Complaint under Court of Chancery Rule 12(b)(6) for failure to state a claim, Rule 23.1 for failure adequately to plead demand futility and 6 *Del. C.* §§ 18-1001–1003 for lack of standing (the "Motion").

1

After carefully reviewing the Complaint and the parties' arguments in connection with the Motion, I am satisfied the Complaint must be dismissed. As an initial matter, the Complaint is devoid of well-pled factual allegations that any of the named Defendants did anything actionably wrong. Beyond the factual deficiencies in the pleading, the Complaint also fails as a matter of law. Hindlin has not adequately alleged a gap in the LLC Agreement that the implied covenant may be invoked to fill. And, because Hindlin's dilution claim is derivative in nature and Hindlin is no longer a Core unitholder, he lacks standing to bring a breach of fiduciary duty claim. My reasoning follows.

## I. BACKGROUND

I have drawn the facts from the well-pled allegations in the Complaint,[1] documents incorporated by reference or integral to the Complaint and those matters of which I may take judicial notice.[2]

---

[1] Citations to the Complaint are to "Compl. ¶ __."

[2] *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004) (noting that on a motion to dismiss, the Court may consider documents that are "incorporated by reference" or "integral" to the complaint); *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 170 (Del. 2006) (holding this Court may, when considering a motion to dismiss, take judicial notice of documents not subject to reasonable dispute).

## A. The Parties

Plaintiff, Jacob Hindlin, is a "highly successful" writer and producer of pop music.[3]  He first invested in Core in 2015.[4]

Defendant, Lukasz Gottwald, is a "highly successful" music industry publisher and producer.[5]  Gottwald was a co-founder and the Chief Cultural Officer of Core, and served on the Board at all relevant times.[6]  Gottwald promoted Core as an investment opportunity to his peers in the music industry.[7]

Defendant, Lawrence Spielman, is a certified public accountant who served as Hindlin's business manager from November 2010 until July 2018.[8]  Spielman encouraged Hindlin to invest in Core, and was on the Board at all relevant times.[9]

---

[3] Compl. ¶ 2.  Hindlin is known professionally as Jacob Kasher.

[4] Compl. ¶ 10.

[5] Compl. ¶ 3.  Gottwald is known professionally as Dr. Luke.

[6] Compl. ¶ 7.  Defendants note that Gottwald resigned from the Board in 2016. *See* Opening Br. in Supp. of Defs.' Mot. to Dismiss ("OB"), Ex. G.  As the document relied upon by Defendants to demonstrate Gottwald's resignation was not attached to or incorporated by reference in the Complaint, I cannot consider it on a motion to dismiss. *See Wal-Mart Stores*, 860 A.2d at 320.  Regardless, Gottwald's Board status does not ultimately impact my analysis.

[7] Compl. ¶¶ 3, 5.

[8] Compl. ¶ 4.

[9] Compl. ¶¶ 5, 7.

Defendant, Renee Karalian, is a lawyer who provides various legal services to Gottwald.[10] She was a member of the Board at all relevant times.[11]

## B. Hindlin's Investment in Core and the Subsequent Sale to KDP

Spielman pitched an investment in Core to Hindlin in February 2015.[12] Hindlin acquired 2,000 Core units for $12,000 soon after.[13] In connection with this initial investment, Hindlin signed a joinder binding him to the LLC Agreement.[14] In early 2017, Gottwald directed Core's President to send Hindlin a Private Placement Memorandum in hopes that Hindlin would participate in Core's latest fundraising round.[15] Again following Spielman's recommendation, Hindlin acquired an additional 2,000 Core units, this time for $120,000.[16]

On October 1, 2018, Hindlin was informed that Core was being acquired by KDP for an enterprise value of $525 million (the "Acquisition").[17] The Acquisition

---

[10] Compl. ¶ 6.

[11] Compl. ¶ 7.

[12] Compl. ¶ 10.

[13] *Id.*

[14] Compl. ¶ 11.

[15] Compl. ¶ 13.

[16] Compl. ¶ 14.

[17] Compl. ¶ 16.

closed in November 2018 for an adjusted price of $449,462,907, and Hindlin did not challenge the Acquisition's terms or fairness.[18]  According to his 2017 Core K-1, Hindlin owned about .613% of Core's equity at year-end 2017.[19]  Based on this stake, Hindlin believes he should have received $2,755,207 for his units following the Acquisition.[20]  Instead, Hindlin was offered consideration totaling $393,582.89.[21]

## C. The Alleged Dilution of Plaintiff's Shares

Hindlin alleges the discrepancy between what he is owed and what he was offered is the result of the Core Board's improper dilution of the Company's minority unitholders.[22]  While the Complaint is frustratingly vague, Hindlin appears to offer three bases to infer dilution.  First, he alleges the Company issued some number of so-called "Incentive Units" prior to the KDP transaction.[23]  These Incentive Units allegedly constituted approximately 18% of the Core units exchanged for KDP shares in the Acquisition, and Hindlin alleges Core's refusal to

---

[18] Compl. ¶ 17.

[19] Compl. ¶ 18.

[20] *Id.*

[21] Compl. ¶ 19.

[22] Compl. ¶ 22.

[23] *See* Compl. ¶ 22; OB Ex. A, (the "LLC Agreement") §§ 5.1(b), (c)(iii).

identify to whom these units were allotted suggests their purpose was to dilute minority shareholders.[24]  As Spielman individually received merger consideration exceeding $76 million, Hindlin believes many of these Incentive Units were granted to Spielman, which he argues further supports an inference of improper dilution.[25]

Next, Hindlin identifies changes in Core's 2017 capital accounts as evidence of dilution.[26]  Core issued 271,829 units that year.[27]  If these units had been issued at the same price Hindlin paid for his units in 2017, these sales should have raised $16.3 million and the Company's year-end capital should have totaled $24.6 million.[28]  Instead, the Company recorded a year-end capital balance of $1.4 million.[29]  Core's capital losses that year were $18.37 million, $4.85 million less than the year-end capital total suggests.[30]  Hindlin argues this discrepancy can only be explained by the issuance of dilutive units.[31]

---

[24] Compl. ¶ 22.

[25] Compl. ¶ 23.

[26] Compl. ¶ 26.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

Last, Hindlin notes that a shift in the proportion of his membership interest to capital interest allows an inference of dilution.[32] In 2015 and 2016, Hindlin's membership interest was three to four times greater than his capital interest.[33] By the end of 2017, however, his membership interest was only about 15% of his capital interest, and he alleges this must be the result of dilution.[34]

## D. Procedural History

Hindlin first filed suit in New York state court in early 2019. In light of the LLC Agreement's mandatory Delaware forum selection provision, Hindlin voluntarily dismissed the New York action and filed his Complaint in this Court on July, 30 2019.[35] Count I alleges a breach of the implied covenant of good faith and fair dealing against each Defendant for diluting Core's minority members.[36] Count II alleges a breach of fiduciary duty against each Defendant for the same

---

[32] Compl. ¶¶ 27–28.

[33] Compl. ¶ 28.

[34] *Id.*

[35] Hindlin has separately filed suit to compel an accounting in New York. That proceeding is ongoing. Compl. ¶ 24.

[36] Compl. ¶¶ 31–34.

alleged dilution.[37]  Hindlin seeks compensatory and punitive damages and attorneys'

fees.[38]

Defendants moved to dismiss the Complaint on September 27, 2019, under

Court of Chancery Rule 12(b)(6) for failure to state a claim, Rule 23.1 for failure to

plead demand futility and 6 *Del. C.* §§ 18-1001–1003 for lack of standing.  The

matter was submitted for decision on May 7, 2020.

## II.  ANALYSIS

The standards by which this court reviews a motion to dismiss for failure to

state a claim are well-settled.  Under Chancery Rule 12(b)(6), the court will dismiss

a complaint only if the plaintiff would be unable to recover under "any reasonably

conceivable set of circumstances susceptible of proof" based on the facts pled in the

complaint.[39]  "All well-pleaded factual allegations are accepted as true[,]" and "the

Court must draw all reasonable inferences in favor of the non-moving party. . . ."[40]

---

[37] Compl. ¶¶ 35–38.

[38] Compl. ¶ 39.  Plaintiff did not address Defendants' Motion to the extent it sought dismissal of his request for punitive damages either in his Answering Brief or at oral argument, apparently recognizing that this court of equity has no jurisdiction to award exemplary damages.  *See Beals v. Washington Int'l, Inc.*, 386 A.3d 1156, 1159 (Del. Ch. 1978).

[39] *Gen. Motors*, 897 A.2d at 168.

[40] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (citations omitted).

"[The Court] do[es] not, however, blindly accept conclusory allegations unsupported by specific facts . . . ."[41]

### A. Plaintiff's Complaint Lacks Sufficient Pled Facts To Put Defendants on Notice of the Claims Against Them

All complaints in this court, at a minimum, must satisfy Chancery Rule 8(a) to survive dismissal.[42] While "Rule 8(a) does not demand [] that plaintiffs present a paragon of the well-organized complaint," it does require that a complaint at least "give general notice of the claim asserted . . . ."[43] This so-called "notice pleading" standard sets a low bar.[44] And yet, this Complaint does not clear it.

---

[41] *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010).

[42] *See* Ct. Ch. R. 8(a) ("A pleading which sets forth a claim for relief . . . shall contain [] a short and plain statement of the claim showing that the pleader is entitled to relief . . . .").

[43] *In re Infousa, Inc.*, 2007 WL 3325921, at \*26 (Del. Ch. Aug. 13, 2007); *Rabkin v. Philip A. Hunt Chem. Corp.*, 498 A.2d 1099, 1104 (Del. 1985). *See also In re Coca-Cola Enters., Inc. S'holder Litig.*, 2007 WL 3122370, at \*4 n.28 (Del. Ch. Oct. 17, 2007) ("[P]laintiffs must allege facts sufficient to show that the legal elements of a claim have been satisfied."), *aff'd sub nom.*, *Int'l Bhd. of Teamsters v. Coca-Cola Co.*, 954 A.2d 910 (Del. 2008).

[44] *See generally*, *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000) (describing notice pleading standards as "permissive"); *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 611 (Del. 2003) ("under Delaware's judicial system of notice pleading, a plaintiff need not plead evidence.").

Dilution, of course, is not *per se* wrongful.[45] As a matter of basic arithmetic, shareholders are diluted every time a company issues new equity. To survive dismissal on a wrongful dilution claim, therefore, a plaintiff must plead not only that he was diluted, but also that the defendants *did something wrongful* that caused him to be *improperly* diluted.[46] On this front, the Complaint falls short.

Stated simply, the Complaint is devoid of any allegations that any Defendant did anything wrong. Spielman is alleged to have received a "large allocation of acquisition consideration[,]" worth $76,095,630.[47] He is also alleged to have ignored Hindlin's requests for information about the Acquisition.[48] Beyond that, the Complaint says nothing of how Spielman breached fiduciary duties or violated the implied covenant of good faith and fair dealing. It appears, instead, that Hindlin would have the Court draw an inference of wrongdoing from the fact that Spielman received more from the Acquisition than he did. Without more, that inference is not reasonable.

---

[45] *See Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 188 (Del. Ch. 2005) ("Therefore, Benihana had legitimate reasons for considering a stock issuance that might have the effect of diluting the BOT shares.").

[46] *Id.*

[47] Compl. ¶ 23.

[48] Compl. ¶ 24.

The allegations against the other Defendants fare no better. Hindlin accuses "the Board"—of which Defendants were only a subset—and "Core" of issuing dilutive Incentive Units to divert consideration from minority shareholders to insiders, but then pleads no facts whatsoever to back that conclusory allegation.[49] Hindlin's pleading strategy, instead, is to complain about a lack of information—not as an independent claim—but as an excuse for his failure to plead facts to support the claims actually asserted.[50] To be sure, Hindlin has asked for information and Core's Board, allegedly, has refused to provide it.[51] But that fact does not relieve Hindlin of his burden to plead sufficient facts to place Defendants on notice of his claims.[52]

---

[49] Compl. ¶¶ 31–38. Indeed, Gottwald is not specifically alleged to have done anything beyond serving as a member of Core's Board, recommending that Hindlin invest in Core and then receiving some unspecified amount of consideration from the Acquisition. Compl. ¶¶ 7, 13, 33. Karalian is named as a party, and then never mentioned again in the Complaint. Compl. ¶¶ 6–7.

[50] Compl. ¶¶ 22, 24, 29.

[51] *Id.; see also* D.I. 28 Oral Arg. on Defs.' Mot. to Dismiss ("OA") 31–32 (describing hostile responses to Plaintiff's information requests). For reasons unclear, Hindlin did not pursue a claim for breach of the LLC Agreement's "Books and Records" provision (Section 15) either before the close of the Acquisition or at the time his requests for information were denied (assuming valid demands for inspection were made). Nor is it clear why he did not wait to file in Delaware until after he obtained the fruits of his accounting action in New York. Compl. ¶ 24.

[52] Ct. Ch. R. 8(a); *In re Coca-Cola Enters.*, 2007 WL 3122370, at *4 n.28.

As best I can tell, Hindlin appears to be invoking a form of *res ipsa loquitur*, whereby the Court would infer wrongdoing because: (i) Hindlin believed his stake in Core was worth more than he was offered following the KDP Acquisition; (ii) Defendants received significant consideration from that transaction; and (iii) Defendants (and others) have refused Hindlin's requests for details of the payouts to insiders following the Acquisition.[53] The fact that Hindlin cannot well plead that any Defendant did anything wrong is, under this theory, of no consequence.

Hindlin points to no authority—and this Court is aware of none—that would allow the Court to draw *res ipsa*-like inferences of wrongdoing in the context of claims against corporate fiduciaries. This, of course, is not surprising. Presumptive inferences of wrongdoing cannot be squared with Delaware's business judgment rule, which presumes corporate fiduciaries have acted in good faith and with due care.[54] In the absence of pled facts, the Court cannot presume wrongdoing.

---

[53] Compl. ¶¶16–29. *See Gen. Motors Corp. v. Dillon*, 367 A.2d 1020, 1023 (Del. 1976) ("While negligence is never presumed from the mere fact of an injury, if the particular manner in which the plaintiff shows the injury to have occurred is so unaccountable that the only fair inference of the cause was the negligence of the defendant, or, stated another way, if the manner in which the injury occurred would lead reasonable persons to conclude that it would not have happened in the absence of some negligence on the part of the defendant, then the doctrine of *Res ipsa loquitur* is properly applicable to establish the negligence of the defendant.").

[54] *See In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 52 (Del. 2006) ("Our law presumes that 'in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests

## B. Plaintiff Has Not Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

Assuming, *arguendo*, that the Complaint adequately puts Defendants on notice of the claims against them, Hindlin still fails to state a claim for breach of the implied covenant of good faith and fair dealing as a matter of law. Hindlin has alleged that Defendants breached the implied covenant by approving the issuance of dilutive units.[55] Defendants respond that the implied covenant is not implicated by those pled facts because the LLC Agreement explicitly addresses the issuance of potentially dilutive shares.[56] With contractual language directly on point, Defendants argue, there is no "gap" for the implied covenant to fill.[57]

---

of the company.'" (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)); *Corwin v. KKR Fin. Hldgs. LLC*, 125 A.3d 304, 312–13 (Del. 2015) (holding business judgment rule applies to fiduciaries of a limited liability company); *Brinckerhoff v. Enbridge Energy Co., Inc.*, 159 A.3d 242, 260 (Del. 2017) (holding that fiduciaries in a limited partnership were entitled to an inference of good faith absent contrary language in the limited partnership agreement); *Binks v. DSL.net, Inc.*, 2010 WL 1713629, at *5 (Del. Ch. Apr. 29, 2010) ("Under Delaware law, courts apply a presumption that directors of corporations act independently, with due care, in good faith and in the honest belief that their actions were in the stockholders' best interests. This presumption, the 'business judgment rule,' is at the foundation and at the core of Delaware corporate law." (quotations omitted)).

[55] Compl. ¶¶ 31–34.

[56] OB 10–12. *See* LLC Agreement §§ 5.1(b), (c)(iii).

[57] OB 10–12. *See Oxbow Carbon & Minerals Hldgs., Inc. v. Crestview-Oxbow Acq., LLC*, 202 A.3d 482, 507 (Del. 2019) (observing that the implied covenant "fills gaps in the contract's provisions").

13

The implied covenant of good faith and fair dealing "attaches to every contract."[58] Our Supreme Court, however, has recently emphasized that "the implied covenant is a cautious enterprise."[59] It may only be invoked "when the contract is truly silent concerning the matter at hand."[60] And, even when a contract is indeed "truly silent" on a matter, the court should still "be most chary about implying a contractual protection when the contract could easily have been drafted to expressly provide for it."[61]

Hindlin has not adequately alleged the existence of a contractual gap to justify his reliance upon the implied covenant. As Defendants correctly observe, the LLC Agreement addresses the issuance of both Incentive Units specifically, and the issuance of units generally.[62] At Section 5.1(b), the LLC Agreement authorizes the Company's Board of Managers to "cause the Company to offer to the Members or other Persons additional Units or other securities of the Company on such terms and

---

[58] *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 442 (Del. 2005).

[59] *Oxbow Carbon & Minerals Hldgs.*, 202 A.3d at 506–07 (emphasizing that the implied covenant should be viewed as providing "a limited and extraordinary legal remedy").

[60] *Id.* at 507 (quoting *Allied Capital Corp. v. GC–Sun Hldgs., L.P.*, 910 A.2d 1020, 1033 (Del. Ch. 2006)).

[61] *Id.* (quotation omitted).

[62] LLC Agreement § 5.1.

14

at prices as the Board of Managers shall determine in its discretion."[63] At Section 5.1(c)(iii), the Board is empowered to issue Incentive Units under the Company's equity incentive plan.[64]

Notwithstanding these clear contractual allowances, Hindlin would have the Court invoke Delaware authority holding that "a claim for violation of the implied covenant of good faith and fair dealing can survive if, notwithstanding contractual language on point, the defendant failed to uphold the plaintiff's reasonable expectations under that provision."[65] That general and important proposition of law is, of course, valid, but it is not as sweeping as Hindlin suggests. As our Supreme Court has recently emphasized, "the implied covenant of good faith and fair dealing cannot be employed to impose new contract terms that could have been bargained for but were not[.]"[66] There is nothing unforeseeable about dilution; for this reason, anti-dilution clauses are common contractual provisions within the governing documents of closely held business organizations.[67] Hindlin either could have

---

[63] LLC Agreement § 5.1(b).

[64] LLC Agreement § 5.1(c)(iii).

[65] Pl.'s Answering Br. in Opp'n to Defs.' Mot. to Dismiss ("AB") 8 (quoting *Renco Gp., Inc. v. MacAndrews AMG Hldgs. LLC*, 2015 WL 394011, at *6 (Del. Ch. Jan. 29, 2015)).

[66] *Oxbow Caron & Minerals Hldgs.*, 202 A.3d at 503 (quoting *Blaustein v. Lord Baltimore Capital Corp.*, 84 A.3d 954, 959 (Del. 2014)).

[67] *See generally Almond for Almond Family 2001 Trust v. Glenhill Advisors LLC*, 2018 WL 3954733, at *11 (Del. Ch. Aug. 17, 2018) (discussing anti-dilution provisions);

attempted to bargain for anti-dilution protection, or he could have chosen not to invest in Core in the absence of this protection. For whatever reason, he did neither. Under these circumstances, Hindlin's attempt to invoke the implied covenant rings hollow.[68] Count I of the Complaint must be dismissed.

## C. Plaintiff's Breach of Fiduciary Duty Claim Must Be Dismissed

Count II of the Complaint pleads a breach of fiduciary duty claim against Defendants arising from the same allegedly dilutive issuance of Core units.[69] Defendants argue the dilution claim is "classically derivative," and Hindlin's standing to prosecute the claim was extinguished upon completion of the KDP Acquisition.[70] Hindlin responds that he is asserting a "dual-natured claim" as described by *Gentile v. Rossette*,[71] and therefore his direct claim has survived the Acquisition.[72]

For purposes of this analysis, I again assume that Hindlin has pled sufficient facts to put Defendants on notice of the breach of fiduciary duty claim. Even so, as

---

*Amazon.com, Inc. v. Hoffman*, 2009 WL 2031789, at *1 (Del. Ch. June 30, 2009) (same); *Robotti & Co., LLC v. Liddell*, 2010 WL 157474, at *2 (Del. Ch. Jan. 14, 2010) (same).

[68] *Oxbow Carbon & Minerals Hldgs.*, 202 A.3d at 507.

[69] Compl. ¶¶ 35–39.

[70] OB 15.

[71] 906 A.2d 91 (Del. 2006).

[72] AB 13.

16

explained below, I agree with Defendants that Count II asserts a purely derivative claim that Hindlin no longer has standing to prosecute.

This court addresses whether a party has standing as a threshold issue in order to "ensure that the litigation before the tribunal is a 'case or controversy' that is appropriate for the exercise of the court's judicial powers."[73] Derivative standing is "a creature of equity," whereby a stockholder plaintiff is permitted to assert an action on behalf of a corporation "solely to prevent an otherwise complete failure of justice."[74] When an action is derivative in nature, "[the] loss of a plaintiff's status as a shareholder generally extinguishes the plaintiff's standing."[75] "In the context of a merger transaction, the derivative-individual distinction is essentially outcome-determinative of any breach of fiduciary duty claims that can be asserted in connection with the merger by the target company stockholders."[76]

This court applies a two-part test to determine whether a claim is direct or derivative: "(1) who suffered the alleged harm (the corporation or the suing

---

[73] *Dover Historical Soc'y v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1110 (Del. 2003). The Court's analysis of the grounds for dismissal of Count II begins and ends with the threshold issue of standing. If the Court were to proceed from there, the failure even to attempt to plead demand futility or a non-exculpated claim of breach of fiduciary duty (*see* LLC Agreement § 8.3) would likewise justify dismissal.

[74] *Schoon v. Smith*, 953 A.2d 196, 202 (Del. 2008).

[75] *El Paso Pipeline GP Co. L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1256 (Del. 2016).

[76] *Golaine v. Edwards*, 1999 WL 1271882, at *4 (Del. Ch. Dec. 21, 1999).

stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?"[77] "Where all of a corporation's stockholders are harmed and would recover *pro rata* in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature."[78] Under this paradigm, the "traditional rule [is] that dilution claims are classically derivative."[79]

There is, however, a narrow exception to the general characterization of dilution claims as derivative. In *Gentile*, our Supreme Court held that a shareholder dilution claim is both derivative and direct when:

> (1) a stockholder having majority or effective control causes the corporation to issue 'excessive' shares of its stock in exchange for assets of the controlling stockholder that have lesser value; and (2) the exchange causes an increase in the percentage of the outstanding shares owned by the controlling stockholder, and a corresponding decrease in the share percentage owned by the public (minority) shareholders.[80]

---

[77] *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004).

[78] *Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008).

[79] *El Paso Pipeline GP Co.*, 152 A.3d at 1251.

[80] *Gentile*, 906 A.2d at 101.

The Supreme Court clarified *Gentile* in *El Paso Pipeline GP Co.* by holding that dilution claims are only dual-natured when there is some expropriation of control, in addition to economic value, from minority stockholders.[81]

No such expropriation of control is alleged here. More importantly, even assuming such an allegation could be mined from the Complaint, Hindlin does not well-plead the existence of a controller or control group.[82] To state a dual-natured claim, "a plaintiff must plead facts from which the Court can reasonably infer an agreement or arrangement among the alleged [control] group members. A complaint fails to meet this standard if all it alleges is that a group of shareholders have 'parallel interests.'"[83] The Complaint is devoid of allegations that Defendants had any such agreement, much less that a control group existed.

Because Hindlin has failed adequately to plead that his breach of fiduciary duty claim is dual-natured under *Gentile*, it is proper to characterize the claim as "classically derivative." Accordingly, Hindlin lost his standing to prosecute his dilution-based breach of fiduciary claims upon consummation of the Acquisition, and for that reason, Count II must be dismissed.[84]

---

[81] *El Paso Pipeline GP Co.*, 152 A.3d at 1264.

[82] *Gentile*, 906 A.2d at 101.

[83] *Silverberg v. Padda*, 2019 WL 4566909, at *6 (Del. Ch. Sept. 19, 2019).

[84] *El Paso Pipeline GP Co.*, 152 A.3d at 1256.

19

### III. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss must be **GRANTED**.

**IT IS SO ORDERED.**