COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: June 11, 2020
Date Decided: August 21, 2020

Bruce E. Jameson, Esquire
Samuel L. Closic, Esquire
Prickett, Jones & Elliott, P.A.
1310 King Street
Wilmington, DE 19801

Kevin M. Gallagher, Esquire
Kevin M. Regan, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Re:    *CHS/Community Health Systems, Inc. and CHSPSC, LLC v.
Steward Health Care System LLC*
C.A. No. 2019-0165-JRS

Dear Counsel:

This breach of contract action arises out of an Asset Purchase Agreement,

dated February 16, 2017 (the "APA"), in which Defendant, Steward Health Care

System LLC ("Steward"), acquired substantially all of the assets of eight hospitals

indirectly owned by Plaintiff, CHS/Community Health Systems, Inc. ("CHS").[1]

---

[1] *See* Third Am. Compl. ("Compl.") (D.I. 42) ¶ 6; Ex. 1 to the Decl. of Kevin M. Regan in Supp. of Steward Health Care Sys. LLC's Opening Br. in Supp. of its Partial Mot. to Dismiss Pls.' Third Am. Compl. (D.I. 49) (the "APA").

In their Third Amended Complaint ("Complaint"), CHS and its affiliate, CHSPSC, LLC ("CHSPSC"), allege Steward is in possession of certain assets that "belong to CHS[] as Excluded Assets" under the APA.[2] Additionally, CHS and CHSPSC allege that Steward has breached its obligation to assume certain contractual liabilities, leaving CHSPSC to satisfy those liabilities at a cost of more than $3,000,000.[3]

CHS and CHSPSC assert three claims in their Complaint that are relevant here. In Count II, CHS *and* CHSPSC allege Steward must indemnify them under the APA.[4] Alternatively, in Counts III–IV, CHSPSC brings a claim for unjust enrichment against Steward "to the extent CHSPSC . . . lacks standing to claim indemnity under the terms of the APA."[5]

---

[2] Compl. ¶¶ 9, 11 (alleging Steward has "received at least $1,031,920.85 in accounts receivable . . . belonging to CHS/CHSI and/or its affiliates").

[3] *See* Compl. ¶¶ 18, 22–23.

[4] Compl. ¶¶ 21–48.

[5] Compl. ¶¶ 49–60.

Steward has filed a Partial Motion to Dismiss Counts II–IV under Court of Chancery Rule 12(b)(6) (the "Motion").[6] According to Steward, Count II must be dismissed (but only as to CHSPSC) because CHSPSC "lacks standing to assert a breach of the APA."[7] *Alternatively*, if CHSPSC does have standing to sue for indemnity under the APA, then the unjust enrichment claims asserted in Counts III–IV must be dismissed because "[a] claim for unjust enrichment will not lie where there is a contract that governs the relationship between the parties."[8]

After careful review of the relevant contract language, I am satisfied the APA is ambiguous as to whether CHSPSC has standing to sue for indemnity as a third-party beneficiary. Because the APA is ambiguous, it cannot be determined on the pleadings whether "an express, enforceable contract that controls" CHSPSC's

---

[6] Def.'s Partial Mot. to Dismiss (D.I. 43). The Complaint also asserts breach of contract under the APA in Count I and breach of contract under a so-called "AP Side Letter" in Count V. Those claims are not subjects of the Motion.

[7] Steward Health Care Sys. LLC's Opening Br. in Supp. of its Partial Mot. to Dismiss Pls.' Third Am. Compl. (D.I. 48) ("DOB") at 5.

[8] DOB at 9 (quoting *Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009)).

relationship with Steward actually exists.[9]  For this reason, at this stage, neither the

indemnification claim in Count II nor the unjust enrichment clams in Counts III and

IV can be dismissed.  Steward's Motion is DENIED.

## I.  BACKGROUND

On February 16, 2017, CHS and Steward signed the APA whereby Steward

agreed to purchase substantially all the assets of certain hospitals owned by CHS.[10]

Specifically, the APA lists a series of "Seller Entities" that would "sell to [Steward]

. . . substantially all of [their] assets . . . which are . . . used in connection with . . .

[a] 'Healthcare Business.'" [11]  Among the "Assets" Steward acquired were

---

[9] *See Kuroda*, 971 A.2d at 891 ("A claim for unjust enrichment is not available if there is a contract that governs the relationship between the parties," but this rule only applies if there is an "express, *enforceable* contract that controls the parties' relationship.") (emphasis supplied).

[10] APA (recitals).  I draw the facts from the allegations in the Complaint, documents incorporated by reference or integral to that pleading and judicially noticeable facts.  *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004) (quoting *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 69 (Del. 1995)) (noting that on a motion to dismiss, the court may consider documents that are "incorporated by reference" or "integral" to the complaint); D.R.E. 201–02 (codifying Delaware's judicial notice doctrine).

[11] APA (Recitals clause D).

"all rights, title and interest in and to" certain "Assumed Contracts" listed in the APA's schedules.[12]

Related to its purchase of the Healthcare Business, Steward agreed to "assume . . . the future payment and performance of . . . all obligations accruing . . . after the Effective Time with respect to the Assumed Contracts."[13] In Section 11.1, captioned "Indemnification by Buyer," Steward also promised to "defend, indemnify and hold harmless [CHS] *and its Affiliates* . . . from and against any and all Losses" incurred in connection with any of the Assumed Contracts.[14] In turn, the APA defines a party's "Affiliates" to include "any other Person directly or indirectly controlling or controlled by, or under direct or indirect common control with, such specified person."[15]

---

[12] APA § 1.1(h) (discussing the "Assumed Contracts"); Compl. ¶ 12.

[13] APA § 1.3(a).

[14] APA § 1.3(a) (defining "obligations . . . with respect to the Assumed Contracts" as "Assumed Liabilities"), § 11.1 (the indemnification provision) (emphasis supplied).

[15] APA § 12.18.

According to the Complaint, CHSPSC is an "Affiliate" of CHS.[16] CHSPSC

is *not*, however, among the "Seller Entities."[17] Even though CHSPSC is neither a

party to the APA nor one of the Seller Entities, CHSPSC has paid ~$3,000,000 to

satisfy contractual obligations that it believes meet the definition of "Assumed

Liabilities" under the APA—meaning they should have been paid by Steward.[18]

To recoup these expenditures, CHSPSC brings Count II against Steward for

indemnification under Section 11.1.[19] Specifically, CHSPSC seeks to hold Steward

to its promise to "indemnify . . . CHS *and its Affiliates*" (i.e., CHSPSC) for Losses

incurred "in connection with" the Assumed Contracts.[20] CHSPSC brings this

claim, not as a party to the APA, but as an "intended third-party beneficiary."[21]

---

[16] Compl. ¶¶ 5–6, 25.

[17] *See* APA Ex. A (listing the "Seller Entities").

[18] Compl. ¶¶ 18, 21–23.

[19] Compl. ¶¶ 41–48.

[20] Compl. ¶¶ 41–48.

[21] Compl. ¶ 44.

In the Motion, Steward argues CHSPSC lacks standing to sue for indemnification under Section 11.1.[22] In support of this argument, Steward cites Section 12.22 of the APA, which states:

> The terms and provisions of this Agreement are intended solely for the benefit of [CHS], [Steward], their Affiliates and their respective permitted successors or assigns, and it is not the intention of the parties to confer, and this Agreement shall not confer, third-party beneficiary rights upon any other person other than the Seller Entities and the Buyer Entities, which the parties agree are express third party beneficiaries of the rights of Seller and Buyer, respectively.[23]

The crux of the parties' dispute centers on whether Section 12.22 allows CHSPSC to enjoy third-party beneficiary status.

## II. ANALYSIS

The standard for deciding a Motion to Dismiss under Court of Chancery Rule 12(b)(6) is well-settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are 'well-pleaded' if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate

---

[22] DOB at 5.

[23] APA § 12.22.

unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[24]

Because this case presents legal issues surrounding the "proper interpretation of language in a contract,"[25] the Court may address these issues at the motion to dismiss stage if "the language of [the] contract is plain and unambiguous."[26] Contract language is ambiguous "only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings."[27] Dismissal is appropriate when the defendant's interpretation is the only reasonable construction as a matter of law and that construction reveals that the plaintiff cannot sustain an actionable claim.[28] On the other hand, if the

---

[24] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (citation omitted).

[25] *Allied Capital Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006) (noting that issues of contract interpretation present questions of law).

[26] *Id.*

[27] *AT&T Corp. v. Lillis*, 953 A.2d 241, 252 (Del. 2008) (quotations omitted).

[28] *Caspian Alpha Long Credit Fund, L.P. v. GS Mezzanine P'rs 2006, L.P.*, 93 A.3d 1203, 1205 (Del. 2014); *Kahn v. Portnoy*, 2008 WL 5197164, at *3 (Del. Ch. Dec. 11, 2008).

plaintiff has proffered a reasonable construction upon which its claim of breach rests, the motion to dismiss must be denied.[29]

As stated above, the parties proffer conflicting constructions of the APA. Under CHS and CHSPSC's reading, the APA extends "third-party beneficiary" status to CHSPSC.[30] Steward disagrees and contends the "only" reasonable interpretation of the APA is that "CHSPSC is not an intended third-party beneficiary."[31] Under Delaware law:

> To qualify as a third party beneficiary of a contract, (i) the contracting parties must have intended that the third party beneficiary benefit from the contract, (ii) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (iii) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract.[32]

---

[29] *Caspian*, 93 A.3d at 1205.

[30] Compl. ¶¶ 42, 44.

[31] DOB at 6.

[32] *Comrie v. Enterasys Networks, Inc.*, 2004 WL 293337, at *3 (Del. Ch. Feb. 17, 2004) (internal quotation omitted).

Of these elements, only the first (intent to benefit) and third (intent to benefit must be a material purpose of the contract) are in dispute.

In support of its construction, CHSPSC emphasizes that Section 11.1 extends an indemnification right to CHS "and its Affiliates." [33] Along similar lines, CHSPSC underscores language in Section 12.22 that "the terms . . . of this Agreement are intended *solely* for the benefit of [] [CHS and its] *Affiliates*."[34] And, as noted, CHSPSC is alleged to be a CHS Affiliate.[35]

Given that the APA must be read "as a whole," giving "each provision and term effect so as not to render any part of the contract mere surplusage," I am satisfied CHSPSC's reading is reasonable because it gives independent meaning to Sections 11.1 and 12.22.[36] Specifically, this reading ascribes meaning to the first

---

[33] APA § 11.1.

[34] APA § 12.22 (emphasis supplied).

[35] Compl. ¶ 25.

[36] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) ("We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage.").

clause of Section 12.22, where the parties appear to agree that the APA is "intended" to benefit CHS's "Affiliates."[37]  If CHS's affiliates are *not* among the APA's intended beneficiaries, it is difficult to divine from the face of the agreement what purpose the parties had for the first clause of Section 12.22.  Stated differently, if only the "Seller Entities" (as Steward argues) are third-party beneficiaries, then the second clause of Section 12.22 (discussed below) would have been sufficient to convey that intent.[38]

On the other hand, Steward's interpretation of the APA is also reasonable. Steward emphasizes the second clause in Section 12.22, where the parties stated, "it is not the intention of the parties to confer, and this Agreement shall not confer, third-party beneficiary rights upon any other person other than the Seller Entities. . . ."[39]  Because, as Steward argues, the Seller Entities are all "Affiliates" of CHS as that term is used in the APA, the only way to ascribe independent

---

[37] APA § 11.1.

[38] *See* DOB at 6–7.

[39] APA § 12.22; DOB at 6.

meaning to the second clause in Section 12.22 is to read it as limiting the universe of CHS "Affiliates" entitled to third party beneficiary status (i.e., only the "Seller Entities").[40] If all CHS "Affiliates" have third-party beneficiary standing, then the second clause in Section 12.22 adds nothing.

The upshot is that both parties' proffered constructions have a surplusage problem.[41] CHSPSC's reading renders the second clause in Section 12.22 surplusage, while Steward's reading fails to give meaning to the first clause in that same provision. This reflects ambiguity. Because the parties have presented "differing—but reasonable—interpretations of" the APA, the Court must turn to "extrinsic evidence to understand the parties' agreement" which "cannot proceed on a motion to dismiss."[42] Steward's Motion must be denied as to Count II.

---

[40] *See* APA § 12.18 (defining an entity's "Affiliates"), APA Ex. A (listing the "Seller Entities"); DOB at 7.

[41] *Osborn*, 991 A.2d at 1160 (noting that Delaware courts will strive to "read a contract as a whole and . . . give each provision and term effect so as not to render any part of the contract mere surplusage").

[42] *Renco Gp., Inc. v. MacAndrews AMG Hldgs. LLC*, 2015 WL 394011, at *5 (Del. Ch. Jan. 29, 2015).

Given that the indemnification claim in Count II may or may not be viable, it is uncertain at this stage whether there exists an enforceable contract that "governs the relationship between" Steward and CHSPSC.[43]  Accordingly, it is reasonably conceivable that CHSPSC may yet demonstrate it is entitled to relief under the unjust enrichment claims asserted in Counts III–IV.[44]  Until the Court construes the scope and meaning of the relevant (and ambiguous) provisions of the APA, it is impossible to assess the legal merits of any of the claims subject to the Motion.

For the foregoing reasons, the Motion must be DENIED.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Joseph R. Slights III*

---

[43] *Kuroda*, 971 A.2d at 891.

[44] *See S'holder Representative Servs. LLC v. RSI Holdco, LLC*, 2019 WL 2207452, at *6 (Del. Ch. May 22, 2019) ("The mere existence of a breach of contract claim will not automatically foreclose pursuit of an unjust enrichment claim" where a "plaintiff pleads a right to recovery" that may not be "controlled by contract."); *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405, at *16 (Del. Ch. Dec. 22, 2010) (stating that a breach of contract claim will foreclose an unjust enrichment claim only where "a contract comprehensively governs the parties' relationship").