# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| 250ok, INC. f/k/a 250ok, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **C.A. No. 2020-0588-JRS** |
| | ) | |
| MESSAGE SYSTEMS, INC., a/k/a | ) | |
| SPARKPOST, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: November 17, 2020
Date Decided: January 22, 2021

James P. Hughes, Jr., Esquire and Lauren Dunkle Fortunato, Esquire of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware and Matthew T. McLaughlin, Esquire and Kacey Houston Walker, Esquire of Nixon Peabody LLP, Boston, Massachusetts, Attorneys for Plaintiff 250ok, Inc., f/k/a 250ok, LLC.

Ryan D. Stottmann, Esquire and Sarah P. Kaboly, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware and Clement S. Roberts, Esquire and Nathan Shaffer, Esquire of Orrick, Herrington & Sutcliffe LLP, San Francisco, California, Attorneys for Defendant Message Systems, Inc. a/k/a SparkPost.

**SLIGHTS, Vice Chancellor**

Plaintiff, 250ok, Inc., alleges Defendant, Message Systems, Inc. d/b/a SparkPost ("SparkPost"), breached a Reseller Agreement (defined below) and misappropriated trade secrets. It now seeks equitable relief to prevent further breaches and further misappropriations. While SparkPost acknowledges that both the breach of contract and misappropriation of trade secrets claims are fact-intensive and not proper for resolution on a motion to dismiss, it has moved to dismiss the Complaint's Count III, where 250ok alleges SparkPost was unjustly enriched by its misappropriation and use of 250ok's confidential information and proprietary data.

When a plaintiff asserts a claim under Delaware's trade secrets statute, that claim "occupies the field" and preempts a claim for common law unjust enrichment. Accordingly, as explained below, the motion to dismiss must be granted.

## I. BACKGROUND

I have drawn the facts from well-pled allegations in the Verified Complaint (the "Complaint") and documents incorporated by reference or integral to that pleading.[1] For purposes of the motion, I accept as true the Complaint's well-pled factual allegations and draw all reasonable inferences in Plaintiff's favor.[2]

---

[1] Verified Compl. ("Compl.") (D.I. 1); *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004) (noting that on a motion to dismiss, the court may consider documents that are "incorporated by reference" or "integral" to the complaint).

[2] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002).

1

## A. The Parties

Plaintiff, 250ok, a Delaware corporation, is an email marketing company that maintains a comprehensive platform supporting "all phases of email marketing, including tools focused on deliverability, design, validation, and engagement analytics."[3]   Defendant, SparkPost, also a Delaware corporation, began its relationship with 250ok as a customer in 2013.[4]  It later became a reseller of 250ok's products under a "Reseller Agreement."[5]

## B. 250ok's Sensor Network Technology

In today's realm of digital technology, companies face the ongoing challenge of ensuring their advertising content reaches their customers and putative customers. Email marketing has become an essential component of digital advertising.[6]  And, as advertisers attempt to place their content in consumers' email inboxes, the email service providers ("ESPs") for those consumers attempt to block that content as

---

[3] Compl. ¶¶ 4, 14.

[4] Compl. ¶¶ 5, 23.

[5] Compl. ¶ 24.

[6] Compl. ¶ 8.

"spam."[7] Ending up in a "spam" folder sounds the death bell for an advertiser's email as it all but ensures the email will never see the light of day once sent.[8]

One way ESPs mark emails as spam is through "spam traps."[9] Spam traps are simply email addresses. These email addresses process incoming emails and "extract certain metadata" to ascertain "the sender's identity and other key information."[10] By analyzing this information, the ESPs seek to identify which senders are worthy of the ESPs "blacklist."[11] If an email address is blacklisted, the sender's emails automatically are diverted into a recipient's spam folder.[12]

Given that operators of spam traps keep the identity of their addresses secret, companies, like 250ok, have attempted to replicate the effect of spam traps to help customers avoid the ESP blacklists.[13] These fake spam traps are known as "sensor networks." A "sensor network" is designed to mirror an ESP's spam trap, but "unlike spam traps, the data obtained from pure sensor networks is not used to

---

[7] Compl. ¶ 10.

[8] Compl. ¶ 9.

[9] Compl. ¶ 10.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] Compl. ¶ 11–12.

populate blacklists" but "to help email senders identify deliverability issues" so they can address the issues and avoid the spam traps.[14]

250ok's proprietary sensor network is known as MailboxPark (the "Sensor Network").[15] Utilizing the Sensor Network as the backbone, 250ok offers a service known as Reputation, "which helps senders monitor their internet protocol addresses and domains to identify sending practices that damage the sender's reputation."[16] To build the Sensor Network and subsequently roll-out its Reputation product, 250ok "invested significant resources" in order to build "an innovative software platform that leverages partnerships with a wide range of domain owners and managers to generate email data from the traffic sent to those domains."[17] 250ok maintains that "[t]he components, composition, and architecture of the Sensor Network are not known or readily ascertainable, . . . [which] allows the Sensor Network to mimic the functionality of spam-trap networks."[18]

---

[14] Compl. ¶ 13.

[15] Compl. ¶ 19.

[16] Compl. ¶ 15.

[17] Compl. ¶ 18.

[18] Compl. ¶ 20.

## C. The Reseller Agreement

On July 17, 2015, 250ok and SparkPost entered into the Reseller Agreement, whereby "SparkPost [was designated] as a reseller of the service that 250ok provides through its Platform (the 'Service')."[19] The Reseller Agreement granted SparkPost a license to "use and access the 250ok Service for the purpose of bundling the subscription to the Service for re-sale with [SparkPost] products and services to [SparkPost's] Customers . . . ."[20]

To protect 250ok's information, the Reseller Agreement, at Section 5.2, contained several restrictions upon SparkPost's use of information it received as a 250ok reseller:

> Restrictions. [SparkPost] shall not (a) modify, copy or create derivative works based on the Service; (b) frame or mirror any content forming part of the Service, other than on [Sparkpost's] and Customer's own intranets or otherwise for its own internal business purposes; (c) reverse engineer the Service; or (d) access the Service in order to (i) build a competitive product or service, or (ii) copy any ideas, features, functions or graphics of the Service.[21]

As defined, "Confidential Information" included, among other things, "technology and technical information, product designs, and business processes."[22]

---

[19] Compl. ¶ 24.

[20] Compl. ¶ 26 (alteration in original); Compl., Ex. A ("Reseller Agreement") § 3.5.

[21] Reseller Agreement § 5.2.

[22] Compl. ¶ 29; Reseller Agreement § 6.1.

In Section 6.2 of the Reseller Agreement, SparkPost promised "not to disclose or use any Confidential Information of [250ok] for any purpose outside the scope of this Agreement."[23] SparkPost also agreed that it would "use the same degree of care to protect the Confidential Information as it used to protect its own information of a confidential and proprietary nature, but in no event shall it use less than reasonable care."[24]

### D. 250ok's Disclosure and SparkPost's Alleged Misuse of 250ok's Confidential Information

After 250ok launched its Sensor Network, and in furtherance of the Reseller Agreement, 250ok provided SparkPost with "proprietary data generated from its own Sensor Network."[25] 250ok also provided SparkPost detailed information regarding a number of product features, including "encoded information contained in email headers"[26] and "the composition and architecture of its Sensor Network."[27] This data transparency, according to 250ok, was unique within the industry and provided particular value to recipients of the information, including SparkPost.[28]

---

[23] Compl. ¶ 29 (alteration in original); Reseller Agreement § 6.2.

[24] Compl. ¶ 29; Reseller Agreement § 6.2.

[25] Compl. ¶ 33.

[26] Compl. ¶ 35.

[27] Compl. ¶ 37.

[28] Compl. ¶ 41.

In the early spring of 2019, SparkPost began exploring the possibility of acquiring some or all of 250ok's business, leading to a May 10, 2019 meeting between the parties.[29] At this meeting, "SparkPost presented 250ok with a demonstration of its new product, SparkPost Signals, which incorporated sensor-network data to replicate the functionality of 250ok's Service."[30] When asked how SparkPost acquired the information necessary to build out its own sensor network, SparkPost's Chief Technology Officer acknowledged that SparkPost "had figured out how to 'reverse engineer' the domains that constitute 250ok's Sensor Network."[31] Upon learning that its confidential information had been used for this purpose, 250ok expressed its view that SparkPost had misappropriated 250ok's confidential information and declined SparkPost's offer to purchase the company.[32]

On May 14, just four days after its meeting with 250ok, SparkPost publicly introduced SparkPost Signals.[33] According to 250ok, "SparkPost could not have developed—and did not develop—its Signals product . . . without wrongfully

---

[29] Compl. ¶¶ 42, 46.

[30] Compl. ¶ 47.

[31] *Id.*

[32] Compl. ¶ 48.

[33] Compl. ¶ 49.

appropriating 250ok proprietary and confidential information and/or trade secrets that SparkPost gleaned from or as a result of its reseller relationship with 250ok."[34]

### E. Procedural History

250ok filed its Complaint in this Court on July 16, 2020. 250ok alleges that SparkPost misappropriated its proprietary information related to its Sensor Network and has used this information to build and monetize its own sensor network known as SparkPost Signals. The Complaint comprises three counts. Count I alleges breach of the Reseller Agreement; Count II alleges misappropriation of trade secrets under the Delaware Uniform Trade Secret Act (the "DUTSA")[35]; and Count III alleges unjust enrichment. SparkPost has moved to dismiss only Count III. The proffered grounds for dismissal are that Count III is preempted by 250ok's statutory claim for misappropriation of trade secrets under the DUTSA and otherwise barred as duplicative of 250ok's breach of contract claim.

For reasons explained below, I agree with SparkPost that 250ok's claim under the DUSTA encompasses the restitutionary elements and purposes of its common law unjust enrichment claim and that the common law claim, therefore, is

---

[34] Compl. ¶ 52.

[35] 6 *Del. C.* § 2001 *et seq.*

8

preempted. Given this holding, I need not address whether the unjust enrichment claim is improperly duplicative of the breach of contract claim.[36]

## II. ANALYSIS

The standard for deciding a motion to dismiss under Court of Chancery Rule 12(b)(6) is well-settled:

> all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[37]

---

[36] For what it is worth, I note that I likely would not have granted SparkPost's motion on this ground. Pleading unjust enrichment in the alternative is permitted where "there is doubt surrounding the enforceability or the existence of the contract." *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at *8 (Del. Ch. Aug. 26, 2005). On this issue, SparkPost argued itself into a corner. SparkPost argued on the inhale that "the existence and validity of the Reseller Agreement is undisputed." Def.'s Opening Br. in Supp. of Partial Mot. to Dismiss Pl.'s Verified Compl. ("OB") (D.I. 23) at 12; *250ok, Inc. f/k/a 250ok, LLC v. Message Sys., Inc., d/b/a SparkPost*, C.A. No. 2020-0588-JRS, at 18 (Del. Ch. Nov. 17, 2020) (TRANSCRIPT) (D.I. 34). But, at the same time, SparkPost argued on the exhale that it "reserves the right to argue for the proper interpretation of the Reseller Agreement or that individual provisions are unenforceable. But it does not dispute that the Reseller Agreement is a valid legal agreement between the parties." OB at 12 n.4. If SparkPost later argues that certain provisions of the Reseller Agreement are unenforceable, then that will bring to the fore a potential dispute regarding the enforceability of the Reseller Agreement. In the meantime, the fact that SparkPost reserved its rights with respect to enforceability bars SparkPost from arguing that the enforceability of the Reseller Agreement is not in dispute such that unjust enrichment is improperly duplicative.

[37] *Savor*, 812 A.2d at 896–97 (citation omitted).

9

As noted, SparkPost's motion to dismiss is prompted, in part, by 250ok's choice to plead both misappropriation of trade secrets under the DUSTA and unjust enrichment in the same Complaint. Section 2007 of the DUTSA provides:

(a) Except as provided in subsection (b) of this section, this chapter displaces conflicting tort, restitutionary and other law of this State providing civil remedies for misappropriation of a trade secret.

(b) This chapter does not affect:

(1) Contractual remedies, whether or not based upon misappropriation of a trade secret;

(2) Other civil remedies that are not based upon misappropriation of a trade secret; or

(3) Criminal remedies, whether or not based upon misappropriation of a trade secret.[38]

By its terms, the statute presents the threshold question of whether a common law claim that arguably is "displaced" by the statute can be dismissed as such before the court has determined that a protectable trade secret exists.[39] On this point, our courts have almost uniformly held that Delaware "has joined the 'majority view' that Section 2007 of the DUTSA precludes common law claims based on misappropriation of business information even in cases in which the claim does not

[38] 6 *Del. C.* § 2007.

[39] *iBio, Inc. v. Fraunhofer USA, Inc.*, 2020 WL 5745541, at *12 (Del. Ch. Sept. 25, 2020) ("The parties disagree over a threshold question under the statute: Does the statute displace claims that seek to protect confidential information that does not qualify as a trade secret under the DUTSA?").

meet the statutory definition of 'trade secret' under the Code."[40] Under this majority view, "[p]reemption applies regardless of whether the information would ultimately rise to the level of a trade secret."[41] Thus, unless expressly carved-out, the DUTSA prohibits even alternatively pled common law claims that are based on the same wrongdoing as a trade secrets claim, notwithstanding that the alleged trade secret might later be deemed unworthy of statutory protection.

250ok argues that even if the DUTSA precludes common law claims pled in the alternative, the statute only "displaces" tort-based claims, not contract-based claims like unjust enrichment. But this misconstrues the nature of unjust enrichment and ignores the plain language of the statute. The DUTSA unambiguously provides that claims in service of a "restitutionary" remedy are displaced by the statute.[42] And that is precisely the essence of the unjust enrichment cause of action; unjust

---

[40] *Atl. Med. Specialists, LLC v. Gastroenterology Assocs., P.A.*, 2017 WL 1842899, at \*15 (Del. Super. Apr. 20, 2017); *iBio*, 2020 WL 5745541, at \*12.

[41] *Alarm.com Hldgs., Inc. v. ABS Capital P'rs Inc.*, 2018 WL 3006118, at \*11 (Del. Ch. June 15, 2018) (internal quotations omitted) (quoting *Yeiser Research & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1051 (S.D. Cal. 2017)); *Ethypharm S.A. France v. Bentley Pharm., Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005) (holding that the DUTSA preempts "all claims stemming from the same acts as the alleged misappropriation").

[42] 6 *Del. C.* § 2007.

enrichment is a quasi-contract claim that seeks restitution.[43]   It is, therefore, displaced, or preempted, by the DUTSA.

This construction of the DUTSA is not groundbreaking; both Delaware and federal courts have consistently held that unjust enrichment claims "based on the same alleged wrongful conduct as the trade secret claims" are preempted by the DUTSA.[44]  For instance, in *Incyte Corp. v. Flexus Biosciences, Inc.*, our Superior Court held that an unjust enrichment claim was preempted by the DUTSA where that claim alleged, "Defendants have enriched themselves by acquiring and using Incyte's trade secrets and confidential information."[45]  While 250ok avoids the term "trade secret" in its Count III, it is clear the claim for unjust enrichment pled in that count rests on the same alleged misappropriation of "confidential information and

---

[43] *See Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999) ("For a court to order restitution it must first find the defendant was unjustly enriched at the expense of the plaintiff.").

[44] *Incyte Corp. v. Flexus Biosciences, Inc.*, 2017 WL 7803923, at *3 (Del. Super. Ct. Nov. 1, 2017) ("Therefore, to the extent Incyte's unjust enrichment and civil conspiracy claims are based upon misappropriation of trade secrets, the motion to dismiss those claims is granted on the basis of DUTSA displacement."); *Ethypharm*, 388 F. Supp. 2d at 434 ("[The unjust enrichment] claim is based entirely on the same facts which purportedly support the misappropriation of trade secrets and, thus, is displaced by the DUTSA.").

[45] *Incyte*, 2017 WL 7803923, at *2.  In reaching this result, the court noted "that it need not decide whether the complaint's mention of the misuse of 'confidential information' in addition to the misuse of trade secrets saves the claims from displacement" because plaintiffs had not "argue[d] that Defendants misappropriated any confidential information that was not a trade secret." *Id.* at *2 n.18.  Likewise, here, Plaintiff has not alleged that any relevant confidential information misappropriated by SparkPost is not a "trade secret" under the DUTSA.

proprietary data" that animates the misappropriation of trade secrets claim in Count II.[46]

250ok argues *Total Care Physicians, P.A. v. O'Hara* supports its view that unjust enrichment claims are not subject to preemption under the DUTSA. There, the Superior Court declared in a footnote that "[t]he unjust enrichment claim is not a tort-based claim and is not, therefore, subject to the statutory preemption addressed in *Leucadia*."[47] While this is a seemingly clear pronouncement of law, the decision in *Total Care* fails to reflect the current state of our law for a number of reasons.[48]

First, *Total Care* was decided before our Supreme Court issued its decision in *Savor, Inc. v. FMR Corp.* In *Savor*, the Court clarified that the DUTSA's "displacement" provision does not apply only to tort-based claims, but rather potentially preempts all "alternative common law claims" beyond those expressly exempted from preemption in the statute.[49] Second, *Incyte* also postdates *Total Care* and, with careful and persuasive analysis, the court there determined the DUTSA

---

[46] *Accord Ethypharm*, 388 F. Supp. 2d at 434 (holding an unjust enrichment claim "based entirely on the same facts which purportedly support the misappropriation of trade secrets . . . displaced by the DUTSA").

[47] *Total Care Physicians, P.A. v. O'Hara*, 2002 WL 31667901, at *10 n.54 (Del. Super. Ct. Oct. 29, 2002); *Leucadia, Inc. v. Applied Extrusion Techs.*, 755 F. Supp. 635, 637 (D. Del. 1991).

[48] I note that this judge was the author of *Total Care* "in a former life."

[49] *Savor*, 812 A.2d at 898.

13

displaces an unjust enrichment claim.[50]  Finally, in *Total Care*, the court found that "the misappropriation of trade secrets claim affords [the Plaintiff] an adequate remedy at law which, in turn, disables its unjust enrichment claim."[51]  Thus, the court's declaration that unjust enrichment claims were not subject to statutory preemption was irrelevant to the outcome of that case; the court found the unjust enrichment claim unavailable in the shadow of the misappropriation of trade secrets claim, albeit for a reason that varied slightly from statutory preemption.

Under our settled law, what matters for preemption purposes is whether the trade secrets and unjust enrichment claims are based on the "same alleged wrongful conduct."[52]  If so, then the unjust enrichment claim must be dismissed.  250ok fails to dispute SparkPost's argument that 250ok's unjust enrichment claim is based on the same facts and wrongdoing that support its trade secrets claim, and for good reason.  As noted, the trade secrets claim alleges, "SparkPost used the confidential and proprietary trade secrets . . . to derive, through improper means, further 250ok trade secrets regarding the components, composition, and architecture of 250ok's Sensor Network."[53]  The unjust enrichment claim rests on the same facts: "SparkPost

---

[50] *Incyte*, 2017 WL 7803923, at *2–3.

[51] *Total Care*, 2002 WL 31667901, at *10 n.54.

[52] *Savor*, 812 A.2d at 898.

[53] Compl. ¶ 67.

acted in knowing bad faith in misappropriating 250ok's confidential information and proprietary data to exploit 250ok's Sensor Network, which 250ok expended substantial time and money to develop."[54] Given the factual overlap, 250ok's unjust enrichment claim is preempted by the DUTSA and, therefore, must be dismissed.[55]

## III. CONCLUSION

Based on the foregoing, the motion to dismiss must be GRANTED. Count III of the Complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

---

[54] Compl. ¶ 78.

[55] Of course, under 6 *Del. C.* § 2003, 250ok may seek restitutionary damages as a remedy for any proven misappropriation of trade secrets, but unjust enrichment "does not survive as a standalone claim." *Incyte*, 2017 WL 7803923, at *3; 6 *Del. C.* § 2003 ("Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.").