# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MESERET TAMIRIE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. N25C-08-237 DJB |
| v. | ) | |
| | ) | |
| SERVIS ONE, INC D/B/A BSI | ) | |
| FINANCIAL SERVICES, et al. | ) | |
| | ) | |
| Defendant. | ) | |

Date Submitted:  March 25, 2026
Date Decided:  June 23, 2026

## ORDER ON DEFENDANT'S
## MOTION TO DISMISS – GRANTED

On this 23 day of June, 2026, upon consideration of Defendant Servis One, Inc. d/b/a BSI Financial Services Motion to Dismiss,[1] Plaintiff's Response,[2] the arguments of counsel,[3] and the entire record in this case, it appears to the Court that:

1.     Plaintiff Meseret Tamirie (hereinafter "Plaintiff") filed this action against Defendant Servis One, Inc. d/b/a BSI Financial Services ("hereinafter BSI"), Allied Mortgage Group, Inc. (hereinafter "Allied"), and Mortgage Electronic

---

[1] *Mesetret Tamirie v.* Servis One, Inc. d/b/a BSI Financial Services, N25C-08-237 DJB, Superior Court Civil Docket Item (hereinafter "D.I.") 9.
[2] D.I. 13, 15.
[3] D.I. 22.

Registration Systems, Inc. (hereinafter "MERS"), in connection with a modified mortgage loan she signed on March 11, 2022, which she contends was different than the contract the parties orally negotiated.[4] Plaintiff's Complaint seeks damages for (1) Breach of Contract; (2) Violation of the Delaware Consumer Fraud Act ("DCFA"); (3) Negligent Misrepresentation; and (4) Unjust Enrichment.[5] Pending before the Court is BSI's Motion to Dismiss under Superior Court Civil Rule 9(f) and 12(b)(6), in which it argues the three (3) year statute of limitations has passed.[6]

2.  Plaintiff possessed a mortgage through Defendant Allied. In December 2020, Plaintiff entered into a COVID mortgage forbearance plan; Defendant BSI, "a mortgage loan servicing company," was the loan servicer for Allied.[7] On February 4, 2022, Andrew Curtis (hereinafter "Curtis"), a representative from BSI, contacted Plaintiff regarding options available to cure the default on her mortgage.[8] Curtis presented Plaintiff with two options to bring her defaulted mortgage account current: "(a) An interest rate increase from 2.875% to 3.500% or (b) Maintenance of the original 2.875% interest rate with a slightly higher payment and an additional lien of approximately $25,000 added to the back of the loan."[9] Plaintiff selected the

---

[4] D.I. 1.
[5] *Id*.
[6] D.I. 9.
[7] D.I. 17 at ¶ 7.
[8] *Id*. at ¶ 8.
[9] *Id*.

second option and confirmed her decision in writing via email in sometime between February 4, 2022, and March 11, 2023.[10]

3. On February 25, 2022, Plaintiff executed a Loan Modification Agreement with Allied and MERS, which was recorded in the New Castle County Recorder of Deeds.[11] On March 11, 2022, Plaintiff executed and returned loan modification agreement documents for her mortgage, which Allied and MERS received on March 19, 2022.[12]

4. Seventh months later, in November 2022, "Plaintiff discovered that her interest rate had been improperly set at 3.875% instead of the agreed 2.875%, and an additional lien of approximately $85,000 had been added instead of the agreed $25,000."[13] Around the same time, over the course of numerous communications, Plaintiff contacted BSI about the discrepancies and spoke with eight different representatives, including Curtis, but her efforts to resolve the issues were unsuccessful.[14] BSI subsequently attempted to resolve the dispute on December 18, 2024, and offered Plaintiff "a one-time payment of $2,500, a $2,220 reimbursement, and a $35 monthly rejection."[15] Again on January 16, 2025, BSI offered Plaintiff

---

[10] *Id*. at ¶¶ 8-11.
[11] D.I. 17 at ¶ 10.
[12] *Id*. at ¶ 11.
[13] *Id*. at ¶ 12.
[14] *Id*. at ¶ 13.
[15] *Id*. at ¶ 14.

"$10,000 in exchange for a full legal release."[16] Plaintiff rejected both offers.[17] Three months prior to commencing this action, on May 21, 2025, Plaintiff sent BSI a demand letter to correct the issues, which remained unresolved.[18]

5.    Plaintiff filed her Complaint on August 28, 2025.[19] BSI filed its Motion to Dismiss on October 30, 2025.[20] On November 12, 2025, Plaintiff filed her first Response in Opposition to BSI's Motion to Dismiss,[21] as well as her First Amended Complaint "to correct clerical error in the spelling of Plaintiff's name."[22] On November 13, 2025, Plaintiff filed a second Response in Opposition to BSI's Motion to Dismiss.[23] That same day, Plaintiff filed her Second Amended Complaint and added MERS as a Defendant.[24] BSI filed its Reply Brief on November 19, 2025.[25] Oral argument was heard on February 11, 2026.[26] Following argument, the Court instructed the parties to engage in mediation.[27] The parties alerted the Court on March 25, 2026, that mediation was unsuccessful.[28]

---

[16] *Id.* at ¶ 15.
[17] *Id.* at ¶¶ 14-15.
[18] *Id.* at ¶ 18.
[19] D.I. 1.
[20] D.I. 9.
[21] D.I. 13.
[22] D.I. 14.
[23] D.I. 15.
[24] D.I. 17.
[25] D.I. 19.
[26] D.I. 22.
[27] D.1. 23.
[28] D.I. 26.

6.	Under Superior Court Civil Rule 12(b)(6) a motion to dismiss will be granted "where the plaintiff cannot recover 'under any reasonably conceivable set of circumstances susceptible of proof.'"[29] Under that rule the Court will:

> (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) [not dismiss the claims] unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[30]

Conclusory allegations that are not supported by specific factual allegations may not survive a motion to dismiss.[31]

7.	Upon review of a motion to dismiss on statute of limitations grounds, the Court employs a three-step analysis to determine whether a plaintiff's claims will be barred by the statute of limitations.  In so analysing, the Court must consider 1) when the cause of action accrued, 2) whether the complaint includes sufficient facts to permit a conceivable inference that a tolling doctrine applies, and 3) if a tolling doctrine applies, when the plaintiff was on inquiry notice.[32]

8.	BSI moves to dismiss Plaintiff's breach of contract claim "because the statute of limitations bars the claim, BSI is not a party to the contract, and [Plaintiff]

---

[29] *Khushaim v. Tullow Inc.*, 2016 WL 3594752 at *2 (Del. Super. Jun. 27, 2016) (citing Del. Super. Ct. R. 12(b)(6)).
[30] *Id.*
[31] *Id.*
[32] *Id*.

5

fails to allege a breach."[33]  In response, Plaintiff contends that the statute of limitations did not begin to run until negotiations ended on January 16, 2024, when settlement negotiations failed, BSI faces liability under the contract, and that she has successfully pled breach.[34]  Plaintiff also argues her claims are tolled under the doctrine of equitable tolling, the discovery doctrine, and continuing wrong doctrine.[35]

9.      Plaintiff first claims that her breach of contract claim is not barred by the statute of limitations because settlement negotiations tolled the statute of limitations under the doctrine of equitable tolling.[36]  Under Plaintiff's theory of equitable tolling, the statute did not begin to run until negotiations ended on January 16, 2024.[37]  In making this argument, Plaintiff relies on *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.,* and *In re Dean Witter Partnership Litig.*[38]  Plaintiff's citation to the *Wal-Mart Stores, Inc. v. AIG Life Ins. Co* is incorrect.  There is a long litigation history to the *Wal-Mart* case, which started when the Court of Chancery granted AIG's motion to dismiss on statute of limitations grounds.  Wal-Mart appealed to the Delaware Supreme Court, who reversed and remanded the case to Chancery

---

[33] D.I. 9 at 2.
[34] D.I. 15 at 2-3, 6.
[35] *Id*. at 3, 5-6.
[36] *Id*. at 3.
[37] *Id*.
[38] *Id*. at 5, citing *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611, 620 (Del. Ch. 2005)

6

Court for improperly making findings of fact as to when the statute of limitations was tolled.[39] The *Wal-Mart Stores* case cited by Plaintiff does not address equitable tolling and does not concern any issue related to the statute of limitations; the citation provided by Plaintiff was, while in the same case, a decision by the Court of Chancery concerning issues of litigation subsequent to the remand.[40] For purposes of this decision, the Court will presume Plaintiff intended to cite to the *Wal-Mart Stores* decision by the Delaware Supreme Court that remanded the case to Chancery Court.[41] The facts, however, are distinguishable from the case at bar. First and foremost, the doctrine of equitable tolling was not applied, rather the Court's decision centered on the definition of when a cause of action "accrues" and whether the "discovery rule" tolled the statute of limitations for Wal-Mart Stores. The issue turned on whether Wal-Mart's claims could have been discovered earlier. The Supreme Court ruled that it was not appropriate to be decided upon a motion to dismiss, given the unclear factual issue.[42]

10. Plaintiff does accurately cite to *In re Dean Witter Partnership Litigation* as discussing equitable tolling. The *Dean Witter* court held that the

---

[39] *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 321 (Del. 2004).
[40] *Wal-Mart Stores, Inc. v. AIG Life Ins. Co*., 872 A 2d 611, 620 (Del. Ch. 2005).
[41] The Court is extending a courtesy to Plaintiff in this liberal reading. This mis-citation raises concerns that generative A.I., without independent verification, has been used in the submission of litigation papers in this case.
[42] *Id*.

doctrine of equitable tolling only operates to toll the statute of limitations period for claims "until an investor knew or had reason to know of the facts constituting the wrong."[43]    Further, the statute is tolled "only until the plaintiff discovers (or exercising reasonable diligence should have discovered) his injury . . . [and] . . . when the plaintiff is objectively aware of the facts giving rise to the wrong, i.e., on inquiry notice."[44] Inquiry notice simply requires facts consistent with a showing that the plaintiff should have discovered the alleged wrong.[45]

11.    Here, Plaintiff could have and should have discovered the discrepancies contained in the agreement at the time she executed the loan modification on March 11, 2022. Plaintiff candidly conceded at argument that she simply did not carefully read the documents she signed assuming it appropriately summarized the modification agreement reached.   Plaintiff's candor to the Court was appreciated. However, it is plain on its face that there are no set of circumstances that would allow a finding that the doctrine of equitable tolling is triggered.  Thus, equitable tolling does not save Plaintiff's claims.  Further, there is nothing in the record to support the claim that the settlement negotiations occurred to cause a delay in Plaintiff filing suit until after the statute of limitations.  The fact that the parties failed

---

[43] *In re Dean Witter P'ship Litig.,* 1998 WL 442456, at *4 (Del. Ch. July 17, 1988), aff'd, 725 A.2d 441 (Del. 1999) (TABLE).
[44] *Id*., citing *In re ML-Lee Acquisition Fund II, L.P. Litig.*, D. Del., 848 F. Supp. 527, 554 (1994).
[45] *In re Dean Witter P'ship Litig,* 1998 WL 442456, at *7.

to resolve this dispute pre-litigation does not establish an equitable tolling of the statute of limitations.

12. Nor can Plaintiff rely on the discovery or continuing wrong doctrines to save her causes of action.[46] Under the discovery doctrine, the statute of limitations may be tolled "where the injury is 'inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of.'"[47] Again, Plaintiff cannot rightfully maintain an argument that she is "blamelessly ignorant" of not discovering the errors in the loan modification agreement until November 2022. Plaintiff had a duty to review and understand the terms of the agreement prior to having executed it on March 11, 2022. She did not. The information was available to Plaintiff for discovery as of March 11, 2022. This fact is fatal to the application of the discovery doctrine.

13. The same is true for the continuing wrong doctrine. In Plaintiff's view this doctrine applies because although BSI collected interest payments at the rate stipulated by the written agreement, it was not the rate she verbally requested, but nonetheless BSI refused to change the rate. Plaintiff incorrectly on the decision in

---

[46] D.I. 15 at 5-6.
[47] *Guerrieri v. Cajun Cove Condo. Council*, 2007 WL 1520039, at *6 (Del. Super. Ct. Apr. 25, 2007).

*Cantor Fitzgerald, L.P. v. Cantor*[48] in support of her assertion. The *Cantor Fitzgerald* case discusses reformation claims stemming from a partnership agreement and does not address the continuing wrong doctrine.[49] Regardless, Plaintiff has failed to establish that the continuing wrong doctrine applies to toll the statute of limitations here.

14. "The statute of limitations for breach of contract claims is three years from the accrual of the cause of action."[50] The statute of limitations does not begin to run until there is a breach.[51] Breach of contract claims accrue "as soon as the breach occurs, even if the aggrieved plaintiff is ignorant of the breach."[52] "At the motion to dismiss stage, the Court must accept all facts pled in the complaint as true."[53] "If the complaint pleads facts sufficient to demonstrate that the Court should toll the statute of limitations, this Court will not dismiss the complaint."[54]

---

[48] *Cantor Fitzgerald, L.P. v. Cantor* 2000 WL 307370, at *8 (Del. Ch. Mar. 13, 2000), overruled by *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 68 A.3d 665 (Del. May 9, 2013)).
[49] *Id.*
[50] *Sykes v. Touchstream Techs., Inc.,* 2024 WL 1299928, at *10 (Del. Ch. Mar. 27, 2024) (citing 10 *Del. C.* § 8106.)).
[51] *Id.* at *10.
[52] *Navient Sols., LLC v. BPG Off. Partners XIII Iron Hill LLC*, 2023 WL 3120644, at *11 (Del. Super. Ct. Apr. 27, 2023).
[53] *Sykes*, 2024 WL 1299928, at *10 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002).
[54] *Id.*, citing *Certainteed Corp. v. Celotex Corp.,* 2005 WL 217032, at *7 (Del. Ch. Jan. 24, 2005).

15. In this case, Plaintiff alleges that Defendants breached the contract because the terms of the contract she executed on March 11, 2022, were different than the terms she had orally agreed upon. Although she did not discover the discrepancies until November of 2022, the alleged breach would have occurred on the date she executed the agreement containing the purported inconsistent terms, or on March 11, 2022. Given the applicable three (3) year statute of limitations, which begins to accrue at the time of the breach, the statute of limitations for Plaintiff's claim would have run on March 11, 2025. Plaintiff filed her Complaint on August 28, 2025. Therefore, Plaintiff's breach of contract claim is barred by the statute of limitations.

16. Plaintiff's counts II-IV all similarly fail. Plaintiff's claim pursuant to the Delaware Consumer Fraud Act, Count II, is similarly subject to a three-year statute of limitation.[55] As are her claims for Negligent Misrepresentation (Count III) and Unjust Enrichment (Count IV).[56]

17. A full analysis of whether Plaintiff's individual claims will survive under Rule 12(b)(6) is not necessary given the findings that the statute of limitations bars the requested relief. However, it is notable that BSI is not a party to the contract, which would cause significant impediments to Plaintiff's ability to prove

---

[55] 10 *Del. C.* § 8106.
[56] *Id.*

the necessary elements of her claim, even if they survived the statute of limitations challenge.[57] In this case, the agreement at issue was made between the Plaintiff ("borrower"), Allied Mortgage Group Inc. ("Lender"), and Mortgage Electronic Registrations Inc. ("Mortgagee"). BSI is not a party to the contract.

18. Further, "a failure to read bars a party from seeking to avoid or rescind a contract."[58] Delaware courts have consistently emphasized the importance of reading the terms of a contract before signing it. In *Graham v. State Farm Mut. Auto Ins. Co.*, the Delaware Supreme Court enforced an arbitration clause in an insurance contract despite the insured's wishes because "[a] party to a contract cannot silently accept its benefits and then object to its perceived disadvantages, nor can a party's failure to read a contract justify its avoidance."[59] The court explained that "if the [plaintiffs] had read their policy after receiving it, they would have discovered the arbitration clause. If they believed this clause to be sufficiently objectionable, they could have cancelled the policy .... Nevertheless, the [plaintiffs] continued to accept coverage."[60]

---

[57] *Aviation W. Charters, LLC v. Freer*, 2015 WL 5138285, at *9 (Del. Super. July 2, 2015) ("It is a general principle of contract law that only a party to a contract may be sued for breach of that contract.").

[58] *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Est. Fund*, 68 A.3d 665, 677 (Del. 2013).

[59] *Kirkwood Motors, Inc. v. Conomon*, 2001 WL 112054, at *3 (Del. Super. Feb. 5, 2001) (citing *Graham* v. State Farm Mut. Auto Ins. Co., 565 A.2d at 913.)).

[60] *Kirkwood Motors, Inc*, 2001 WL 112054, at *3.

19. In this case, had Plaintiff read the terms of the contract before she signed it on March 11, 2022, the discrepancies between the terms to which she agreed and the written terms would have been discovered. Specifically, she would have known that the interest rate was 3.875%, not 2.875%, and that there would be an $85,000 lien added to the loan as opposed to a $25,000 lien.[61]

20. It is surely concerning that such a discrepancy between agreed to terms and the written terms occurred, a fact that is not disputed. However, the facts of this case prove to be a stark reminder to all that careful consideration must be given prior to signing legal documents. It is unfortunate that the parties could not reach an equitable resolution to this issue. Per her pleadings, Plaintiff has consulted with the Department of Justice Consumer Protection Unit, which may provide her some avenue of recourse, given the vast discrepancy between the negotiated modification and the one committed to writing and presented for signature by Plaintiff.

21. That said, the cause of actions alleged in the complaint occurred at the time the written contract was signed, in March 2022. The Complaint contains sufficient facts upon which the Court can discern whether a tolling doctrine applies;

---

[61] D.I. 15 at 6.

one does not.  Therefore, for the foregoing reasons the Court **GRANTS** Defendant BSI's Motion to Dismiss the Complaint.

  **IT IS SO ORDERED.**

<br>

        Danielle J. Brennan, Judge

<br>

cc:  All parties via Lexis File&Serve Express &
   Mesetret Tamarie, *pro se* via U.S. Mail